Jack R. CAHALL, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–773.

United States Court of Veterans Appeals.

Dec. 19, 1994.

Jack R. Cahall, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, David W. Engel, Deputy Asst. Gen. Counsel, and Michael P. Butler were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

FARLEY, Judge:

The appellant, Jack R. Cahall, appeals from an April 26, 1993, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for residuals of a back injury and of a left ankle injury. For the reasons that follow, the Court will affirm the BVA decision regarding both claims.

## I. FACTUAL BACKGROUND

The appellant served in the Air Force from October 1948 to August 1952. Record (R.) at 37. He was a member of the Army National Guard of Louisiana from September 15, 1959, until his discharge on September 14, 1962. R. at 225; *see also* R. at 93. He is listed as having been on active duty for training from February 10 to 20, 1960; August 10 to September 3, 1960; July 16 to 30, 1961; and June 29 to July 15, 1962. R. at 225.

The appellant reported that he sustained a back injury in a plane crash while in the Air Force. R. at 184–86. Except for obtaining some pain pills from the village doctor in Mont Jolie, Canada, where the plane crashlanded and later obtaining more pills at "Fort Pepperrell A.F.B.," the appellant did not seek treatment for his injuries "because [his] three (3) year enlistment was up several days pervious [sic] to the above accident, and [he] was waiting for orders to board ship for ZI (U.S.) and did not want to be put in the hospital and miss the ship." R. at 185. During his August 1952 separation examination, the appellant did not complain of any back problems or report that he had injured his back in a plane crash, and no back problems were detected by the examining doctor. R. at 95–96.

Seven years later, at his August 1959 National Guard enlistment examination, the appellant did not complain of back pain or injuries, and none were detected. R. at 98–101. The appellant claimed to have reinjured his back twice as a National Guardsman, both times as a result of parachuting. R. at 187, 189. The appellant submitted an affidavit from a fellow National Guardsman, Henry J. Cook, III, who stated that he had witnessed both of these occurrences. R. at 164–65, 170–71.

Private medical billings from Ochsner Foundation Hospital in New Orleans, Louisiana, reflect that the appellant underwent a closed reduction of a fracture of the left ankle on September 24, 1961. R. at 103–16. Newsletter articles chronicle his broken ankle as a result of a parachute jump. R. at 119, 121, 123. While these articles imply that he parachuted in his capacity as a National Guardsman, records from the Ochsner Foundation Hospital concerning his admission on September 24, 1961, describe him as a "29 [year old white male] who parachute jumps for a hobby." R. at 246. Prudential Insurance Company paid partial medical expenses for the ankle injury. R. at 125. As to this occurrence Henry J. Cook, III, stated in his affidavit that "in September of 1961, Jack R. Cahall and myself were participating in a training parachute jump at Broussard Airport in Lafayette, Louisiana.... [D]uring our second jump on that day ... Mr. Cahall suffered a badly fractured ankle with other leg injuries." R. at 167.

On February 14, 1989, the appellant submitted an APPLICATION FOR COMPENSATION OR PENSION; under the section entitled "NATURE AND HISTORY OF DISABILITIES," he wrote that he had received back injuries on October 8, 1951, February 8 to 17, 1960, September 24, 1961, and July 15, 1962, and a left ankle injury on September 24, 1961. R. at 133–37. He also referenced a letter from Doctor Ralph J. Gessner (R. at 129–30), which was included with the application. That letter states:

It is my impression that this patient sustained several rather acute injuries to his lumbar spine for which he now has a degenerative process at the lumbo sacral junction....

I feel that the patient did get a good result from the fractured left ankle, however, I am of the opinion that he has permanent limitations of motions of the ankle.

I am further of the opinion that this patient has a disability of approximately 30 percent of the left ankle and 10 percent of the back. I am of the opinion that he has a total physical impairment of 40 percent of the body secondary to various injuries

which he sustained while serving in active duty while in the service.

R. at 130. There is no indication that Dr. Gessner had seen the appellant's service medical records.

The appellant was granted a VA examination, which resulted in diagnoses of "[d]egenerative osteoarthritis lumbar spine," and "[s]light traumatic arthritis left ankle ... residual pain." R. at 140. The report of the radiologist regarding the appellant's ankle was that "THERE IS A WELL HEALED FRACTURE OF THE DISTAL FIBULA WITH SATISFACTORY ALIGNMENT OF THE MORTISE." R. at 141. As to his back, she reported that the "VERTEBRAL BODIES AND DISC SPACES HAVE MANTAINED [sic] NORMAL HEIGHT AND ALIGNMENT IS SATISFACTORY." R. at 143–44.

An August 3, 1989, rating decision denied service connection for both of the appellant's claims. R. at 152–53. The regional office (RO) found that although there were incomplete medical records, the available ones did not indicate that the appellant had been treated for a back or a left leg injury while in the service. R. at 152. The RO also noted that the appellant's medical examination upon release from the Air Force showed no evidence of back problems. *Ibid.* As to the ankle injury, the RO stated that there was no evidence that he was on active or inactive duty for training at the time it occurred. *Ibid.* On September 4, 1989, the appellant filed a Notice of Disagreement. R. at 155. Another rating decision was issued on October 30, 1989, summarily denying his claims. R. at 176.

On January 17, 1989, after VA had contacted the Louisiana National Guard and was informed that no additional records were in the appellant's file, a confirmed rating decision was issued. R. at 201. The BVA affirmed the denial of both claims on June 15, 1990, holding that the clinical record did "not establish the incurrence of injuries to the veteran's back or left ankle during a period of active duty for training or inactive duty training." R. at 32. Further, the Board found that the other, "nonclinical" evidence, including the statements of Mr. Cook, was "insufficient to establish injuries in service resulting in chronic residual disabilities when

they are not documented in contemporaneous clinical records." R. at 33.

In a July 26, 1991, single-judge memorandum decision, this Court reversed the BVA's decision and remanded the case. 3 Vet.App. 4. R. at 378. The Court held that the BVA's statement that the lay evidence was "insufficient to establish injuries in service . . . when they are not documented in contemporaneous clinical records" was contrary to 38 C.F.R. § 3.307(b) (1990), "which provides that in order to prove injury in service, '[t]he factual basis may be established by medical evidence, competent lay evidence, or both.'" R. at 378.

After the Court-ordered remand, the BVA remanded the case to the RO on March 26, 1992, (1) to get more information from the Louisiana National Guard, including a "specific statement as to whether the veteran was on active duty for training on September 24, 1961," and (2) to obtain all his private medical records. R. at 213–15. After this further development, the RO issued a confirmed rating decision on October 14, 1992. R. at 296. The decision stated:

> The National Guard advise[s that] records do not show the veteran was on active duty or inactive duty for training on 9–24–61, the date of his parachuting accident.
>
> .    .    .    .    .
>
> Service connection remains denied for a back injury and left leg injury as the additional evidence does not show either one of these conditions were incurred on active duty or on inactive duty training.

*Ibid.*

On November 30, 1992, the appellant submitted a statement in which he asserted that he had been unable to attend weekday drills due to his civilian occupation, and that, although the regular training jump was on September 26, 1961, he was authorized to perform it on September 24, 1961, "ET and VOC." R. at 335. (The appellant had earlier explained that he used the abbreviation "ET" to mean "Equivalent Training" and "VOC" to mean "Verbal Orders by Commander." R. at 334.) The morning report of the Louisiana National Guard for September 26, 1961, which was previously obtained by the RO

and also submitted by the appellant with his statement in support of claim, lists the appellant as being absent "NLD [not in the line of duty]" and his location as City Hospital in New Orleans. R. at 349.

The BVA affirmed the RO's denial on April 26, 1993. The Board held that

> Dr. Gessner's opinion attributing the degenerative changes of the veteran's lumbosacral spine to his reported inservice back injuries is not found to be credible and probative because there is no indication that Dr. Gessner reviewed any of the veteran's prior medical examination and treatment reports.

R. at 20. The Board went on to find that "the probative value" of this evidence was outweighed by other evidence, namely the appellant's August 1952 Air Force separation examination and his August 1959 National Guard enlistment examination, where the appellant did not complain of any back problems and none were detected by the doctors. R. at 95, 98. The Board was also influenced by a 1965 medical record from the Ochsner Clinic, in which it was noted that the appellant had complained of low back pain, but the impression of the doctor was that it was "[c]hronic back strain—postural. Possibly aggravated by car he uses (GM seats tend to be low and angled backward [causing] strain and fatigue)." R. at 274. Based on this evidence, the Board concluded that "any injuries to the veteran's back which occurred during his Federal military service are shown to have been acute and transitory, resolving without residual disability." R. at 20.

With regard to the ankle injury, the Board found that the appellant was not on active or inactive duty for training on September 24, 1961, the date he broke his ankle. R. at 21–22. The Board held that it was bound by 38 C.F.R. § 3.203 (1993), and *Duro v. Derwinski*, 2 Vet.App. 530, 532 (1992), which, when "read together with 38 U.S.C.[] §§ 101(24), 106 . . . signifies that only official service department records can establish if and when an individual was serving on active duty, active duty for training, or inactive duty training." R. at 22. The only evidence the Board deemed probative was the morning

report from the Louisiana National Guard for the date in question and a contact between a VA official and Chief Warrant Officer Warren Lund of the Louisiana National Guard. R. at 304. The chief warrant officer had checked the morning reports and informed the VA official that the appellant was listed as "absent, not in line of duty" for September 26, 1961, and also said that "the hospital bill would be paid by the [National Guard] if the injury occurred on [active duty]." *Ibid.* (It is clear that the National Guard did not pay for his medical expenses, since his health insurance covered part of them. R. at 125.) The Board concluded that the appellant was not on inactive duty training on September 24, 1961, and thus was not eligible to be service connected. While the Board conceded that the appellant jumped from a National Guard plane, it held that he did so *"as a civilian."* R. at 22.

## II. ANALYSIS

### A. Back Claim

In denying service connection for a particular disabling condition, the Board makes a finding of fact which the Court reviews under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski,* 1 Vet.App. 49, 52–53 (1990). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible basis' in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert,* 1 Vet.App. at 53.

■ The Court finds that there is a plausible basis in the record for the Board's conclusion that the "degenerative osteoarthritis" of the spine the appellant currently suffers from did not first arise during service or during the one-year presumptive period established by title 38 of the United States

Code and VA regulations. *See* 38 U.S.C. §§ 1101(3), 1110, 1112(a)(1); 38 C.F.R. §§ 3.303, 3.307(a)(3) (1993). There is no documentation in either his Air Force or Louisiana National Guard service records of injury to his back. Both the appellant's 1952 Air Force separation examination and his 1959 National Guard enlistment examination fail to reveal any evidence of back pain reported by him or discovered by the doctors. R. at 95, 98. A 1965 examination attributed the back pain the appellant was experiencing to the fact that his car's driver seat caused him back strain and fatigue. R. at 274. Finally, the doctor who performed his VA examination characterized his condition as "degenerative osteoarthritis," with no mention that it was caused or aggravated by his in-service injuries, and the x-ray reports were essentially normal. R. at 140, 143, 144.

Even according credibility to the appellant and Henry J. Cook, III, their assertions only tend to establish that the appellant injured his back; there is nothing in their statements or elsewhere in the record that demonstrates that the injury was other than acute and transitory. Nor do the statements show chronicity. *See* 38 C.F.R. § 3.303(b) ("For the showing of chronic disease[, including arthritis,] in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word 'Chronic.'"). The record does not establish that there was a continuity of symptomatology, or that the appellant's arthritis became manifest to a degree of 10% or more during the year following his discharge from service. 38 U.S.C. § 1112(a)(1); 38 C.F.R. §§ 3.303(b), 3.307(a)(3).

Although the letter from Dr. Gessner states that the appellant "sustained several rather acute injuries to his lumbar spine for which he now has a degenerative process at the lumbo sacral junction," it appears that Dr. Gessner relied heavily on the appellant's recitation of his own medical history, a circumstance which makes the doctor's conclusion that the appellant's injuries caused his arthritic condition less persuasive. *See*

*Reonal v. Brown,* 5 Vet.App. 458, 460 (1993). Furthermore, Dr. Gessner reported that the x-rays of the appellant's spine "revealed degenerative changes at L5–S1," without any mention that this arthritis was induced by trauma. R. at 129–30. In contrast, regarding the appellant's ankle, Dr. Gessner stated that the x-rays revealed "a rather marked amount of traumatic arthritic changes for his age and this is certainly secondary to the trauma of the left ankle." R. at 129. Accordingly, the BVA's denial of service connection for a back condition must be affirmed.

### B. Ankle Claim

■ In order for service connection for an injury to be granted, the facts of a case must establish that a veteran was injured while he or she was "in the active military, naval or air service." 38 U.S.C. § 1131. "In the active military, naval or air service" is defined as including "any period of inactive duty training during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty." 38 U.S.C. § 101(24). Section 3.203 of title 38 of the Code of Federal Regulations, entitled "Service records as evidence of service and character of discharge," provides:

(a) *Evidence submitted by a claimant.* For the purpose of establishing entitlement to pension, compensation, dependency and indemnity compensation or burial benefits [VA] may accept evidence of service submitted by a claimant (or sent directly to [VA] by the service department) ... without verification from the appropriate service department if the evidence meets the following conditions:

(1) The evidence is a document issued by the service department....; and

(2) The document contains needed information as to length, time and character of service; and

(3) In the opinion of [VA] the document is genuine and the information contained in it is accurate.

. . . .

(c) *Verification from the service department.* When the claimant does not submit evidence of service or the evidence submitted does not meet the requirements of paragraph (a) of this section ..., [VA] shall request verification of service from the service department.

38 C.F.R. § 3.203 (1993). In *Duro,* 2 Vet. App. at 532, this Court held:

The provision in [38 C.F.R. § 3.203(a)] allows VA to accept evidence submitted by the veteran without service department verification only if that evidence is itself a document issued by the service department and VA is satisfied as to its authenticity and accuracy. The issuance of this regulation was within the scope of VA's statutory authority to prescribe specific regulations regarding the "proof" of service. 38 U.S.C. § 501(a)(1). Therefore, VA is prohibited from finding, on any basis other than a service department document, which VA believes to be authentic and accurate, or service department verification, that a particular individual served in the U.S. Armed Forces.

■ Under the circumstances presented by this appeal, the Board was correct in stating that the *Duro* interpretation of 38 C.F.R. § 3.203 "signifies that only official service department records can establish if and when an individual was serving on active duty, active duty for training, or inactive duty training." R. at 22. The official service department records do not establish that the appellant was in the "active military, naval or air service" on September 24, 1961. If the appellant disagrees with the information contained on those records, his remedy, if any, must be pursued with the Army Board for the Correction of Military Records.

### III. CONCLUSION

On consideration of the record and the pleadings of the parties, the Court holds that the appellant has not shown that he is entitled to service connection for either his back condition or ankle condition. The Court also is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b). *See Gilbert,*

*supra.* Accordingly, the Court **AFFIRMS** the April 26, 1993, Board decision.