Carmelitte N. VENTURELLA, Appellant,

v.

Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.

No. 95–989.

United States Court of Veterans Appeals.

July 15, 1997.

Charles W. Tucker, was on the brief, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel;

and Carolyn F. Washington were on the brief, Washington, DC, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

HOLDAWAY, Judge, filed the opinion of the Court. STEINBERG, Judge, filed a concurring opinion.

HOLDAWAY, Judge:

The appellant, Carmelitte N. Venturella, on behalf of the minor children of herself and the veteran, appeals from the July 14, 1995, decision of the Board of Veterans' Appeals (BVA or Board) that denied continued entitlement to dependency and indemnity compensation (DIC). The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the BVA decision.

## I. FACTS

Dale A. Wallace, the veteran, served on active duty in the United States Air Force (USAF) from July 1972 to December 1976. In March 1988, the veteran was fatally injured when the USAF A–10 aircraft he was piloting was destroyed in a crash. He was participating in a USAF Fighter Weapons Instructor Course. At the time, he was employed as an Air Reserve Technician and was serving as a major in the USAF Reserve. The USAF casualty report stated that the appellant was a "member on civilian TDY status." The report also noted that "if member[']s TDY orders read 1DY status, the member died while serving in a civilian capacity."

In October 1991, the appellant filed a claim for DIC on behalf of the minor children of herself and the veteran. In November 1991, the VA regional office (VARO) granted her claim for DIC.

In January 1992, the National Personnel Records Center sent the VARO a personal data report which revealed that the appellant's last period of active duty for training was in March 1985, and that his death "[d]id not occur during an active duty/inactive duty training period." In August 1992, the VARO informed the appellant that it was proposing to terminate her children's DIC because her husband's death had not occurred during qualifying duty. By administrative decision, in December 1992, the VARO discontinued her children's DIC benefits and found that the overpayment was due to an administrative error.

The appellant filed a Notice of Disagreement in January 1993 and a substantive appeal to the Board in March 1993. The BVA determined that the appellant, on behalf of her minor children, had failed to demonstrate that the claim was well grounded because military records demonstrated that the veteran was not on active duty, active duty for training, or inactive duty training at the time of his death.

## II. ANALYSIS

 The surviving spouse, children, or parents of a qualifying veteran who dies from a service-connected injury while in the active military service are entitled to receive DIC benefits. *See* 38 U.S.C. § 1310; *Smith (Cynthia) v. Derwinski,* 2 Vet.App. 241, 243 (1992). "The term 'service-connected' means, with respect to disability or death, that such disability was incurred or aggravated, or that the death resulted from a disability incurred or aggravated, in line of duty in the active military, naval, or air service." 38 U.S.C. § 101(16).

> The term "active military, naval, or air service" includes active duty, any period of active duty for training during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of inactive duty training during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty.

38 U.S.C. § 101(24); *see also* 38 C.F.R. § 3.6(a) (1996) (implementing regulation). Only service department records can establish if and when a person was serving on active duty, active duty for training, or inactive duty training. *See Cahall v. Brown,* 7 Vet.App. 232, 237 (1994). "[S]ervice department records are binding on VA for purposes of establishing service in the U.S. Armed

Forces." *Duro v. Derwinski,* 2 Vet.App. 530, 532 (1992); *see also* 38 C.F.R. § 3.203.

"Previous determinations [by VA] which are final and binding . . . will be accepted as correct in the absence of clear and unmistakable error," 38 C.F.R. § 3.105(a), and "service connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (the burden of proof being on the Government)," 38 C.F.R. § 3.105(d),

> except where an award was based on an act of commission or omission by the payee, or with his or her knowledge (§ 3.500(b)); there is a change in the law or a Department of Veterans Affairs issue, or a change in interpretation of law or a Department of Veterans Affairs issue (§ 3.114); *or the evidence establishes that service connection was clearly illegal.*

38 C.F.R. § 3.105 (emphasis added).

 The VARO received a personal data report from the National Personnel Records Center in January 1992, which stated that the veteran's "death did not occur during an active duty/inactive duty training period." The report is binding on the VARO and conclusively established that the veteran was not a member of the active military, naval, or air services at the time of his death. Therefore, his death was *not* service connected. There is simply no authority in law that would permit VA to maintain DIC payments to the veteran's children when his death was not service connected. *See* 38 U.S.C. § 1310. Because the evidence establishes that there is no legal entitlement to service connection, the provisions of 38 C.F.R. § 3.105(a) and (d), that limit VA's authority to sever service connection to cases where there is clear and unmistakable error, do not apply, and the payment of DIC benefits to the veteran's children must be discontinued. "[W]here the law and not the evidence is dispositive, the claim should be denied or the appeal to the BVA terminated because of the absence of legal merit or lack of entitlement under the law." *Sabonis v. Brown,* 6 Vet.App. 426, 430 (1994). The BVA's determination that the appellant's claim was not well grounded was harmless error. *See* 38 U.S.C. § 7261(b); *Cacalda v. Brown,* 9 Vet.App. 261, 265 (1996).

The Court does not have jurisdiction to consider any issues that the veteran's family may have about entitlement to benefits that relate to his civilian status.

### III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error that would warrant reversal or remand. The July 14, 1995, decision of the Board is AFFIRMED.

STEINBERG, Judge, concurring:

I concur in the majority opinion, but I write separately regarding my reasons for concluding that the Court's interpretation of 38 C.F.R. § 3.105(a) (1996) in *Russell v. Principi,* 3 Vet.App. 310 (1992) (en banc), and *Damrel v. Brown,* 6 Vet.App. 242 (1994), provides no impediment to the denial of the appellant's claim for reinstatement of the award of service connection for the veteran's death.

The appellant correctly observes that under *Russell* and *Damrel,* and pursuant to 38 C.F.R. § 3.105(a), clear and unmistakable error can be found only upon "the record and law that existed at the time of the prior adjudication in question." *Damrel,* 6 Vet. App. at 245 (citing *Russell,* 3 Vet.App. at 313–14). The appellant therefore objects to the use by the Department of Veterans Affairs (VA), as a basis for discontinuing the November 1991 VA regional office award of dependency and indemnity compensation (DIC), of personnel records that were received *after* that award.

However, 38 U.S.C. § 3.105(d), which provides expressly for the specific situation of severance of an award of service connection, clearly does not contemplate the same situation or implicate the same potential risks as the general provisions of § 3.105(a). *Cf. Graves v. Brown,* 6 Vet.App. 166, 170–71 (1994) (discussing § 3.105(d)'s clear and unmistakable error (CUE) provisions in juxtaposition with the *Russell* criteria concerning § 3.105(a), including the requirement that a determination of CUE be based upon "the record and the law that existed at the time of

the prior decision"). On its face, § 3.105(d)—unlike § 3.105(a)—anticipates the use of new or modified laws and regulations ("[w]here service connection is severed because of a change in or interpretation of· a law or [VA] issue . . .", 38 C.F.R. § 3.105(d)) and of records acquired subsequent to the original VA decision ("[a] change in diagnosis may be accepted as a basis for severance", *ibid.*). Moreover, termination pursuant to § 3.105(d), unlike termination pursuant to § 3.105(a), is not retroactive. Under § 3.105(d), "the award will be reduced or discontinued, if in order, effective the last day of the month in which a 60–day period from the date of notice to the beneficiary of the final rating action expires".

Under the Court's caselaw, service department records are binding upon VA for establishing service in the U.S. Armed Forces, *Duro v. Derwinski,* 2 Vet.App. 530, 532 (1992), and for establishing whether an individual was on active duty, active duty for training, or inactive duty training, *Cahall v. Brown,* 7 Vet.App. 232, 237 (1994). If the Court were to conclude that the *Graves* dictum that suggests that a service-connection award can be terminated pursuant to § 3.105(d) only on the basis of the law and record as it existed at the time of the award thereof, VA would be placed in the impossible situation of being forever bound to a prior determination regardless of changes in the law or later developments in the factual record. In the instant case, under the appellant's proposed reading of § 3.105(d), VA would be caught between the mutually exclusive imperatives of service department records that are binding upon it and a prior RO decision that would not admit of correction based upon those new records. The burden placed upon VA by § 3.105(d) in order to succeed in demonstrating error in a prior decision is high, but it is not meant to be insurmountable.

Because, as the Court today concludes, the BVA could have concluded that any award of DIC in this case was "clearly illegal", pursuant to the preamble to § 3.105, and because the RO provided all the procedural rights that attach pursuant to § 3.105(d) prior to the severance of a service-connection award, the BVA's consideration of this case as one for DIC restoration rather than as a challenge to the propriety of DIC termination was nonprejudicial error. Where an appellant has not been harmed by an error in a Board determination, the error is not prejudicial. *See* 38 U.S.C. § 7261(b) ("Court shall take due account of the rule of prejudicial error"); *Edenfield v. Brown,* 8 Vet.App. 384, 390–91 (1995) (en banc). Accordingly, I concur in the Court's disposition of the case.