**Merritte WILSON, Appellant,**

**and**

**Rebecca H. Cole, Appellant,**

**v.**

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**Nos. 96–458, 96–529.**

United States Court of Veterans Appeals.

Aug. 20, 1998.

Gary W. Thompson, was on briefs for appellant Merritte Wilson.

Florence L. Smith, Bethesda, MD, was on brief for appellant Rebecca H. Cole.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General

Counsel; and Adam K. Llewellyn, Washington, DC, were on briefs for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

NEBEKER, Chief Judge:

The appellants, Merritte Wilson and Rebecca Cole, appeal the March 29, 1996, decisions of the Board of Veterans' Appeals (BVA or Board) which denied service connection for the cause of the death of serviceman Ezra Swanson Moore. Those decisions effectively affirmed the August 1993 termination of benefits to Mr. Moore's two dependent children. The appellants are the custodians of Courtney Moore and Ericka Cole, who were recognized at the time of his death in 1988 as the serviceman's children. Because the factual findings of the BVA are identical, and because the Court's review in each case would be identical, the cases have been consolidated on appeal with the parties' consent. Upon consideration of the briefs of the parties and the record on appeal, the Court will reverse the BVA decisions and order the payment of the benefits due from the date they were terminated.

## I. FACTS

Mr. Moore, the deceased serviceman, served on active duty in the U.S. Navy from March 1982 until his death on February 8, 1988. Record (R.) at 18 (all "R." citations are to the record filed in the appeal of appellant Cole). Shortly after his death, the Department of the Navy issued a "[T]rue Certification of Casualty" (dated February 17, 1988). R. at 86. This report stated that Mr. Moore was on active duty at the time of his death, gave as the cause of his death "[i]njuries sustained as a result of being struck by an automobile—PEDESTRIAN," and identified the two dependent children. R. at 86. A subsequent Department of the Navy investigation, based on Navy records and reports filed by local civilian law enforcement officers, resulted in an opinion that Mr. Moore had killed his wife and then committed suicide by jumping in front of a moving 18-wheel tractor-trailer R. at 21. On February 7, 1988, Mr. Moore's wife had been found strangled in the couple's home. R. at 19.

Witnesses placed Mr. Moore at his home on February 7, and he was posthumously charged with murder. *Id.;* R. at 27–30.

In issuing the charge, authorities relied on evidence found in the Moores' home, and on the fact that five months earlier, Mr. Moore had severely assaulted his wife by rubbing a mixture of Drano and chlorine bleach in her eyes and for several hours prevented her from seeking treatment, leaving her with permanent eye damage and with burned skin on her shoulder and forehead, where the caustic chemicals also made contact. R. at 20. As a result of that assault, he was found guilty of "assault and battery of a high and aggravated nature," fined, and given a suspended 10-year sentence on condition of his completing 200 hours of public service and getting psychiatric counseling. *Id.* He fulfilled these conditions and was not imprisoned. *Id.* The Department of the Navy investigation report, directed to Mr. Moore's commanding officer and forwarded to the Judge Advocate General, stops short of an explicit statement that Mr. Moore's death was the result of willful misconduct. R. at 14–73.

In March 1988, the custodians of his son Courtney Moore and his daughter Ericka Cole applied for dependency and indemnity compensation (DIC), on behalf of the children. R. at 75–78. By rating decision issued in July 1988, VA found that the veteran was not of unsound mind at the time of his death and that "suicide is considered to be willful misconduct." R. at 90. Nevertheless, the following month VA awarded DIC to both children and notified their custodians of the amount that would be paid each month. R. at 92; *see also* Brief of Appellant Wilson at 2. VA paid these monthly benefits until August 1993, when the regional office (RO) issued an administrative decision stating that payment of DIC was clear and unmistakable error under 38 C.F.R. § 3.105(a), and was due to administrative error. The decision noted that the rating decision "which disallowed benefits due to the veteran's willful misconduct ... was erroneously filed in the claims folder with no action taken to discontinue benefits." R. at 94. The August 1993 administrative decision concluded that the

appellants had never been notified of the July 1988 rating decision, but nevertheless proceeded to terminate benefits, based on that rating decision's findings. On appeal, the BVA found that a preponderance of the evidence was against the claim of service connection for the cause of Mr. Moore's death. The appeals to this Court followed.

## II. ANALYSIS

The BVA treated this case as one for service connection for the cause of the deceased serviceman's death. Essentially, however, it is a case of termination of DIC benefits to dependents on the basis that their deceased father's death was not service connected; and the record reveals that VA failed to follow its own regulations governing terminations of benefits. Its failure to do so constitutes prejudicial error. *See* 38 U.S.C. § 7261(b).

DIC is paid to a serviceman's surviving children when the death is service connected. 38 U.S.C. § 1310; 38 C.F.R. § 3.5 (1997). The sole ground for granting DIC to the appellants was as a service-connected death benefit. *See* 38 U.S.C. § 1310(b) (provides for payment of DIC to surviving children of veteran who died while in active "military, naval, or air service" after December 31, 1956). These benefits were granted to appellant Wilson on behalf of Courtney in March 1988, and she was notified by letter. In August 1988, appellant Cole was notified by letter of the benefits granted to Ericka, and appellant Wilson was notified of the change in the monthly dollar amount of benefits Courtney would receive because of the award to Ericka.

The appellants argue that these awards became final. In support of their argument, they point to 38 C.F.R. § 3.104 (1997), which prescribes the finality of decisions of an agency of original jurisdiction. In pertinent part, that section provides:

(a) A decision of a duly constituted rating agency or other agency of original jurisdiction shall be final and binding ... *at the time VA issues written notification* in accordance with 38 U.S.C. [§ ] 5104. *A final and binding agency decision shall not be subject to revision* on the same factual basis except by duly constituted appellate authorities or except as provided in § 3.105 of this part.

(Emphasis added.) The record reveals that the August 1988 written notification to both appellants, despite the VARO's adjudicative decision in July 1988 that Mr. Moore's death was not service connected, constituted a "final and binding agency decision" within the meaning of section 3.104(a). This decision is "not subject to revision" except as provided in 38 C.F.R. § 3.105 (1997).

[2] "Revision of decisions," as set forth in 38 C.F.R. § 3.105, applies except in certain instances not pertinent here. That section states in pertinent part:

(a) *Error.* Previous determinations which are final and binding, including decisions of service connection ... will be accepted as correct in the absence of clear and unmistakable error.

. . . .

(d) *Severance of service connection....* [S]ervice connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (the burden of proof being upon the Government).

38 C.F.R. § 3.105(a), (d). Subsection (d) further provides that, when severance of service connection is considered warranted, a "rating proposing severance will be prepared setting forth all material facts and reasons ... and the claimant will be notified ... of the contemplated action and furnished detailed reasons therefor and will be given 60 days for the presentation of additional evidence to show that service connection should be maintained." 38 C.F.R. § 3.105(d).

The BVA failed to apply the provisions of section 3.105(d), and thus did not sever service connection in accordance with procedures required by law. The BVA is not free to ignore regulations that the Secretary has promulgated consistent with his statutory authority. 38 U.S.C. § 7104(a); *see Crowe v. Brown,* 7 Vet.App. 238, 246–47 (1994), *citing Payne v. Derwinski,* 1 Vet.App. 85, 87 (1990). Rather, "[t]he BVA is required to apply all relevant statutes and regulations appropriate to the particular case

before it." *Browder v. Derwinski*, 1 Vet. App. 204, 205 (1991).

The evidentiary standard for clear and unmistakable error (CUE) has been analyzed in a number of the Court's opinions. Most of these address the appeals of claimants seeking a finding of CUE in a past denial of benefits. However, the Court has held that the standard is equally applicable to VA where the issue is severance of service connection based on CUE. Once service connection has been granted, section 3.105(d) provides that it may be withdrawn only after VA has complied with specific procedures and the Secretary meets his high burden of proof. *Baughman v. Derwinski*, 1 Vet.App. 563, 566 (1991) ("In effect, § 3.105(d) places at least as high a burden of proof on the VA when it seeks to sever service connection as § 3.105(a) places upon an appellant seeking to have an unfavorable previous determination overturned.").

There is a three-part test to determine whether a prior decision is the product of CUE: (1) "[e]ither the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied," (2) the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made," and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question.

*Damrel v. Brown*, 6 Vet.App. 242, 245 (1994) (quoting *Russell v. Principi*, 3 Vet.App. 310, 313–14 (1992) (en banc)). While the RO's July 1993 decision notes that 38 C.F.R. § 3.105(d) is applicable, it does not conduct the required analysis. Neither of the BVA decisions refers to section 3.105. Rather, the BVA addresses the issue as if it were an initial claim for service connection, after commenting initially that the RO had erroneously failed to take action to discontinue DIC payments after preparing the July 1988 decision concluding that Mr. Moore had committed suicide and that his suicide constituted

willful misconduct. In fact, the record reveals that letters informing the appellants of the award of benefits and the level of payment were issued in August 1988. The benefits were therefore technically "awarded" based on a record that included the July 1988 RO decision. Accordingly, the Secretary was obliged to apply the procedures mandated by section 3.105(d).

The Secretary argues that the provisions of 38 C.F.R. § 3.105(a) and (d) are not applicable because Mr. Moore did not have the status of "veteran," and his children have the burden of demonstrating by a preponderance of the evidence that they have the status of dependents of a veteran. *See Laruan v. West*, 11 Vet.App. 80 (1998); *Venturella v. Gober*, 10 Vet.App. 340 (1997). On this record, the Secretary's reliance on *Laruan* and *Venturella* is misplaced. In *Laruan*, the appellant had been discharged under other than honorable conditions. 11 Vet.App. at 81. In *Venturella*, service department records established that the appellant's deceased husband was serving "in a civilian capacity" at the time of his death. 10 Vet. App. at 341. In both *Laruan* and *Venturella* the underlying material facts concerning "non-veteran" status had been conclusively determined. The threshold issue was whether the appellants had otherwise established status by a preponderance of the evidence.

Here, Mr. Moore was unquestionably on active duty at the time of his death. The presumption that he was a veteran thus attached. In the absence of a finding of willful misconduct, *see* 38 U.S.C. § 1310, death on active duty would be in the line of duty and service connected. *See* 38 U.S.C. §§ 101(16); 105(a). A finding of willful misconduct is itself rebuttable through, for example, evidence of mental unsoundness at the time of the misconduct. 38 C.F.R. § 3.302(b)(2). The appellants were not notified of the July 1988 decision which found that the children's father's death was due to willful misconduct. Moreover, because the BVA failed to apply 38 C.F.R. § 3.105, the appellants were never afforded the opportunity to rebut that finding, under the appropriate standard, before their benefits were terminated. These errors amounted to a failure of due process,

and termination of the benefits is fatally flawed.

## III. CONCLUSION

Accordingly, the BVA decisions affirming the severance of DIC are REVERSED, and the matters are REMANDED with directions to pay the appellants the benefits due from the date they were terminated. Should the Secretary commence termination proceedings pursuant to 38 C.F.R. § 3.105, the appellants will have the opportunity, previously denied them, of being heard on their entitlement to derivative benefits.