﻿Citation Nr: AXXXXXXXX
Decision Date: 06/30/20 Archive Date: 06/30/20

DOCKET NO. 200227-71176
DATE: June 30, 2020

ORDER

Service connection for ischemic heart disease is granted.

Service connection for Parkinson’s disease is granted.

As the severance of service connection for lung cancer was improper, the claim of entitlement to restoration of benefits is granted.

REMANDED

A total disability rating based on individual unemployability due to service-connected disability (TDIU) is remanded.

FINDINGS OF FACT

1. The Veteran’s ischemic heart disease is at least as likely as not related to his in service exposure to chemicals.

2. The Veteran’s Parkinson’s disease is at least as likely as not related to his in service exposure to chemicals.

3. In a July 2010 rating decision, the Agency of Original Jurisdiction (AOJ) granted service connection for lung cancer.

4. At the time of the July 2010 rating decision, there was competent evidence that the Veteran’s lung cancer was due to exposure to chemicals in service.

CONCLUSIONS OF LAW

1. The criteria for service connection for ischemic heart disease have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for service connection for Parkinson’s disease have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

3. Severance of service connection for lung cancer was improper. 38 U.S.C. §§ 1110, 1131, 5107, 5112; 38 C.F.R. §§ 3.102, 3.105(d), 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decisions on appeal were issued in January 2009, July 2010, November 2011 and June 2012. Previously, the Veteran elected a higher-level review under the modernized review system of the claims for service connection for ischemic heart disease and Parkinson’s disease, restoration of the grant of service connection for lung cancer, and a TDIU. 38 C.F.R. § 19.2(d). In a March 2019 rating decision, the AOJ denied the claims. In February 2020, the Veteran filed a notice of disagreement and requested the evidence submission review lane, allowing him 90 days to submit additional evidence pertinent to his appeal and without a Board hearing. He submitted relevant evidence within the 90-day period, which ended in May 2020. As the Veteran has elected review of his appeal pursuant to the Appeals Modernization Act, the appeal of these claims under the prior legacy system has been closed. 

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Service connection requires competent evidence of (1) a current disability; (2) the incurrence or aggravation of a disease or injury during service; and (3) a causal relationship between the current disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

A veteran who served in the Republic of Vietnam during the Vietnam Era, the period beginning January 9, 1962 and ending May 7, 1975, shall be presumed to have been exposed to an herbicide agent (like the dioxin in Agent Orange), unless there is affirmative evidence establishing he was not exposed to any such agent. 38 U.S.C. § 1116 (f). A disease associated with exposure to herbicide agents, including ischemic heart disease and respiratory cancers, will be considered to have been incurred in or aggravated by service even though there is no evidence of such disease during service. Such disease shall have become manifest to a degree of 10 percent or more at any time after service, except that chloracne or other acneform disease consistent with chloracne, porphyria cutanea tarda, and early-onset peripheral neuropathy shall have become manifest to a degree of 10 percent or more within a year after the last date on which the veteran was exposed to the herbicide agent. 38 U.S.C. § 1116; 38 C.F.R. § 3.307(a)(6)(ii).

Ischemic Heart Disease

The Veteran asserts that his ischemic heart disease is due to exposure to Agent Orange while serving in Okinawa, Japan. However, the Department of Defense has not yet confirmed that Agent Orange was used in Okinawa. The record does not show, and the Veteran does not assert, that he had in-country service in the Republic of Vietnam. Thus, the Veteran is not entitled to the presumption that he was exposed to an herbicide agent during service.

Notwithstanding the presumptive provisions, service connection may still be established by showing that a disorder resulting in disability is, in fact, causally linked to exposure to herbicides. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

The Veteran’s service personnel records show that he was a member of the NBC (nuclear, biological, and chemical) decontamination team. A Department of Army memo and associated documents show that various chemicals, including herbicides and polychlorinated biphenyls (PCBs), were stored in Okinawa. In an April 2020 report, a private physician opined that the Veteran’s ischemic heart disease was caused by in-service exposure to PCBs, which contribute to the development of cardiovascular disease.

Given the above, and resolving reasonable doubt in the Veteran’s favor, the Board finds that his ischemic heart disease is at least as likely as not related to in-service exposure to chemicals. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Thus, service connection for ischemic heart disease is warranted.

Parkinson’s Disease

The Veteran asserts that his Parkinson’s disease is also due to exposure to Agent Orange while serving in Okinawa. However, as the Department of Defense has not yet confirmed that Agent Orange was used in Okinawa, the Veteran is not entitled to the presumption that he was exposed to an herbicide agent during service. Also, in a June 2017 report, a VA examiner opined that the Veteran’s Parkinson’s disease was not caused by exposure to chemicals or unverified herbicides during service, noting that there was no evidence that he was exposed to Agent Orange. The examiner did not specifically address the Veteran’s exposure to PCBs.

However, as noted above, the record indicates that the Veteran was exposed to various chemicals including PCBs in Okinawa. In an April 2020 report, a private physician opined that the Veteran’s Parkinson’s disease was caused by in-service exposure to PCBs, which contribute to the development of Parkinson’s disease.

Given the above, and resolving reasonable doubt in the Veteran’s favor, the Board finds that his Parkinson’s disease is at least as likely as not related to in-service exposure to chemicals. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Thus, service connection for Parkinson’s disease is warranted.

Severance of Service Connection—Lung Cancer

An award of service connection will be severed only where evidence establishes that such was clearly and unmistakably erroneous (the burden of proof being upon the Government). 38 U.S.C. § 5112; 38 C.F.R. § 3.105(d). When severance of service connection is considered warranted, a rating proposing severance will be prepared setting forth all material facts and reasons. The claimant will be notified at his or her latest address of record of the contemplated action, and furnished detailed reasons therefor, and will be given 60 days for the presentation of additional evidence to show that service connection should be maintained. If additional evidence is not received within that period, final rating action will be taken, and the award will be reduced or discontinued, if in order, effective the last day of the month in which a 60-day period from the date of notice to the beneficiary of the final rating action expires. 38 C.F.R. § 3.105(d).

The Court of Appeals for Veterans Claims (Court) has set forth a three-pronged test to determine whether clear and unmistakable error (CUE) is present in a prior determination: (1) either the correct facts, as they were known at the time, were not before the adjudicator (more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at that time were incorrectly applied; (2) the error must be “undebatable” and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question. Damrel v. Brown, 6 Vet. App. 242 (1994), Russell v. Principi, 3 Vet. App. 310 (1992).

The Court has further stated that CUE is a very specific and a rare kind of “error.” It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Thus, even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be clear and unmistakable. Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993), citing Russell v. Principi, 3 Vet. App. at 313 (en banc).

The Court has held that the same CUE standard that applies to a veteran’s CUE challenge to a prior adverse determination under 3.105(a) is also applicable in the Government’s severance determination under 3.105(d). Once service connection has been granted, section 3.105(d) provides that it may be withdrawn only after VA has complied with specific procedures and the Secretary meets his high burden of proof. See Wilson v. West, 11 Vet. App. 383 (1998). See also Baughman v. Derwinski, 1 Vet. App. 563, 566 (1991) (§ 3.105(d) places at least as high a burden of proof on the VA when it seeks to sever service connection as § 3.105(a) places upon an appellant seeking to have an unfavorable previous determination overturned.). See also Graves v. Brown, 6 Vet. App. 166, 170 (1994) (holding that CUE is defined the same under 38 C.F.R. § 3.105(d) as it is under § 3.105(a)).

However, the evidence that may be considered in determining whether severance is proper under section 3.105(d) is not limited to the evidence before the AOJ at the time of the initial service connection award. Daniels v. Gober, 10 Vet. App. 474, 480 (1997); cf. Venturella v. Gober, 10 Vet. App. 340, 342-43 (1997). The Court reasoned that, because section 3.105(d) specifically contemplates that a change in diagnosis or change in law or interpretation of law may be accepted as a basis for severance, the regulation contemplates the consideration of evidence acquired after the original granting of service connection. It was reasoned that “[i]f the Court were to conclude that... a service connection award can be terminated pursuant to section 3.105(d) only on the basis of the law and record as it existed at the time of the award thereof, the VA would be placed in the impossible situation of being forever bound to a prior determination regardless of changes in the law or later developments in the factual record.” Venturella, 10 Vet. App. at 342-43.

In this case, and in a July 2010 rating decision, the AOJ granted service connection for lung cancer on a presumptive basis, effective April 28, 2010. Citing to a January 1998 Board decision, the AOJ observed that there was credible evidence that the Veteran was exposed to dioxins in Okinawa. The AOJ then conceded the Veteran’s exposure to herbicides and granted service connection for lung cancer. Subsequently, in a June 2012 rating decision, the AOJ severed service connection for lung cancer, effective September 1, 2012. 

Initially, based on the effective dates of service connection and severance, the Board observes that service connection was not in effect for 10 years or more to warrant the protection of 38 C.F.R. § 3.957. A November 2011 rating decision proposed to sever service connection for lung cancer, and the Veteran was notified of this decision later that month. The AOJ provided the Veteran 60 days for the presentation of additional evidence to show that service connection should be maintained. Although the Veteran submitted additional evidence in support of his exposure to Agent Orange in Okinawa, in the June 2012 rating decision, the AOJ found that he was not exposed to Agent Orange in Okinawa, implemented the proposal, and severed service connection for lung cancer. Thus, the Board observes that the procedural requirements of 38 C.F.R. § 3.105(d) have been met.

At the time of the July 2010 rating decision, the pertinent evidence of record consisted of service personnel records, VA medical records, statements from five fellow servicemen, and a January 1998 Board decision. Service personnel records showed that the Veteran was a member of the nuclear, biological, and chemical decontamination team. An April 2010 VA medical record showed that he had lung cancer. In separate statements dated in February 2006, March 2007 and December 2009, five servicemen who served with the Veteran in Okinawa stated that they loaded and unloaded drums of oil, solvent, herbicide including Agent Orange and pesticide for shipment to and from Vietnam and around the island without proper protective gear and often the drums had residue from overfilling or leakage. The January 1998 Board decision, on another veteran’s claim for service connection for prostate cancer, found that credible evidence sustained a reasonable probability that the veteran was exposed to dioxins while serving in Okinawa.

Based on the above, in the July 2010 rating decision, the AOJ conceded exposure to herbicides in service and granted service connection for lung cancer due to that exposure on a presumptive basis.

In the subsequent November 2011 rating decision, the AOJ proposed to sever service connection for lung cancer, noting that the grant of service connection for the disability was CUE. The AOJ explained that the Veteran’s herbicide exposure was incorrectly conceded, as the January 1998 Board decision pertained to another veteran under different facts and circumstances. The AOJ stated that the evidence failed to show that the Veteran was exposed to herbicides in Okinawa as Agent Orange was not stored or used in Okinawa.

Since the July 2010 rating decision, two pertinent medical opinions have been added to the claims file. In a June 2017 examination report, a VA examiner opined that the Veteran’s lung cancer was not incurred in, or caused by, the chemical and unverified herbicide exposures during service, noting the Veteran’s remote history of smoking and work in construction. In an April 2020 report, a private physician opined that the Veteran’s lung cancer was caused by years of in-service exposure to diesel exhaust, which has been associated with lung cancer. Service personnel records show that the Veteran was a truck vehicle mechanic.

Given the above, the Board finds that, at the time of the July 2010 rating decision granting service connection for lung cancer, there was competent evidence that the Veteran’s lung cancer was due to exposure to chemicals, namely Agent Orange, in service. Thus, there was no CUE in granting service connection based on such exposure. While the evidence added to the claims file since that time shows that the Department of Defense has yet to confirm that Agent Orange was stored or used in Okinawa, the record at that time indicated that he handled drums of herbicide, including Agent Orange in Okinawa. Moreover, competent medical evidence has now linked the Veteran’s lung cancer to in-service exposure to other chemicals, namely diesel exhaust, to sustain the grant of service connection.

In conclusion, a review of the evidence of record fails to show that there was CUE in the grant of service connection for lung cancer in the July 2010 rating decision. The Board cannot find that the grant of service connection led to an undebatably incorrect adjudicative result. Accordingly, the Board must conclude that the severance of service connection for lung cancer was improper. Thus, entitlement to restoration of benefits is warranted.

REASONS FOR REMAND

TDIU

In light of the above grants of service connection for ischemic heart disease and Parkinson’s disease—as well as the restoration of service connection for lung cancer, the AOJ must in the first instance assign a rating for each disability prior to the Board’s review of the appeal for a TDIU.

Accordingly, this matter is REMANDED for the following action:

1. Assign a disability rating for the now service-connected ischemic heart disease, Parkinson’s disease, and lung cancer.

2. Then, readjudicate the claim for a TDIU. 

 

 

THERESA M. CATINO

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. W. Kim, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.