# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-1812

CLARENCE W. KING, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On appeal from the Board of Veterans' Appeals

(Argued October 22, 2013                                    Decided March 21, 2014)

*David E. Boelzner* of Richmond, Virginia, with whom *Daniel G. Krasnegor* of Charlottesville, Virginia, and *Minerva R. Glover* of Glen Allen, Virginia, for the appellant.

*Will A. Gunn*, General Counsel, with whom *R. Randall Campbell*, Assistant General Counsel, *Carolyn F. Washington*, Deputy Assistant General Counsel, and *Jelani A. Freeman,* all of Washington, D.C., for the appellee.

Before SCHOELEN, PIETSCH, and GREENBERG, *Judges*.

GREENBERG, *Judge*: The appellant, Clarence W. King, appeals through counsel a February 27, 2012, decision of the Board of Veterans' Appeals (Board) that denied entitlement to non-service-connected pension benefits. Record (R.) at 3-8. The Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. § 7252(a). For the following reason, the Court will reverse the Board's February 2012 decision and remand the matter for the Board to reinstate the appellant's non-service-connected pension effective February 1, 2008.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the U.S. Army from November 22, 1966, to August 10, 1967, during the Vietnam War. R. at 590-91. In December 1966, the appellant was home on leave when his wife was suddenly forced to undergo surgery. R. at 345. The appellant twice attempted to obtain a leave extension through the Red Cross and his commanding officer, but his requests were denied. R. at 438. When his leave expired on January 1, 1967, the appellant chose to remain with his wife and he became absent without leave (AWOL). R. at 345, 365, 390-91, 502,

504. Service personnel records indicate that the appellant was "dropped from the rolls as deserter" on January 3, 1967. R. at 49. The appellant, however, was then assigned to advanced infantry training in February 1967 and promoted from E1 to E2 status in March 1967, even though he had not returned to his unit. R. at 48-49.

In about May 1967, the appellant voluntarily surrendered to his local sheriff. R. at 438. After about 30 days, military police arrived and took him into custody. R. at 391. His AWOL period ended after 155 days on June 5, 1967. R. at 365. He was quickly tried and convicted in a court martial proceeding and sentenced to a six-month term of confinement and hard labor. *Id.* His imprisonment lasted until August 9, 1967, when his superiors deemed him unfit for duty based on his decision to go AWOL and discharged him "under conditions other than honorable." R. at 369-71, 590. At the time of his discharge, the appellant received a Form DD-214 "Armed Forces of the United States Report of Transfer or Discharge." R. at 590. According to the DD-214, the appellant had one month and nine days of net service "creditable for basic pay purposes" and one month and nine days of total active service. *Id.* The form also reveals that the appellant had "non-pay periods time lost" from January 1, 1967, until August 9, 1967. *Id.*

In August 1973, the appellant requested that the Army upgrade his discharge to a general discharge. R. at 438. In August and October 1978, an Army Discharge Review Board concluded that the appellant's decision to go AWOL was driven by his desire to care for his ailing wife. R. at 46. The review panel stated that this finding explained, although it did not excuse, the appellant's misconduct. *Id.* The panel also concluded that the Army may have treated the appellant inequitably by discharging him dishonorably even though he committed no further violations after his arrest. R. at 46-47. Based on these findings, the review panel upgraded the appellant's discharge to "under honorable conditions (general)." R. at 38-47. The Army issued the appellant a new DD-214. R. at 591. The form indicates that the appellant's net active service, total active service, and total service for pay was one month and nine days, and that he had "time lost under 10 U.S.C. § 972 from 1 Jan[uary]-9 Aug[ust 19]67." *Id.*

In January 2006, the appellant applied for a non-service-connected pension. R. at 308-34. The following month, VA requested service records from the Army. R. at 545-46. VA specifically asked the Army to "verify only the unverified periods of service shown and name, ssn, sn, as

applicable." R. at 545-46. In response, the Army stated without elaboration that "all service information has been verified as correct." R. at 546. In June 2006, the Muskogee, Oklahoma, VA regional office (RO) concluded that the appellant "served in the Army from November 22, 1966, to August 10, 1967" and granted the appellant entitlement to a non-service-connected pension. R. at 152, 156-159.

In a letter stamped with the date April 20, 2007, and sent to the appellant, VA wrote: "During a special review of your file, it was determined your service from November 22, 1966, to August 10, 1967, with 221 days lost time for AWOL and Confinement, leaves you with one month and nine days active duty. As a result we propose to discontinue your pension benefits." R. at 120. VA also wrote that the appellant's benefits would continue for 60 days following the "date of this notice," and that the appellant would not have to repay benefits he had already received. R. at 121. In January 2008, the RO discontinued the appellant's pension benefits. R. at 111, 113. Relying on 38 C.F.R. § 3.105(a), the RO concluded that, because the appellant did not have enough creditable service to qualify for a non-service-connected pension, its original decision to grant him entitlement to a pension was the product of clear and unmistakable error. R. at 111, 113.

In its February 27, 2012, decision here on appeal, the Board found that days of active service deemed lost under 10 U.S.C. § 972 cannot be counted toward pension eligibility because the military's classification of the days as "lost" on the appellant's DD-214 reflected its determination that the appellant's absence from his unit was without authorization. R. at 7. Consequently, the Board concluded, the appellant could not be awarded a non-service-connected pension because he did not serve for 90 days during a period of war. R. at 7. The Board also noted that VA sought and received verification of the appellant's service in 2006, and it found that, because the appellant is ineligible for pension benefits as a matter of law, VA is not obligated to further assist him with developing his claim. R. at 5,7.

## II. CONTENTIONS OF THE PARTIES

The appellant argues that, because the record indicates that he may not have met the length of service requirement for a non-service-connected pension, the Secretary was obligated by the regulatory language he promulgated in 38 C.F.R. § 3.203(c) to contact the Army and request a

statement describing the nature of his service. Appellant's Brief (Br.) at 6-8. The appellant asserts that the purpose of § 3.203(c) is "to ensure that complete and accurate information from the military about the length and nature of a veteran's service is of record before [VA] adjudicates entitlement to VA benefits" and that the inconsistencies in his DD-214 forms demonstrate why it is important that the agency fulfills this purpose rather than reach its own haphazard conclusions based on incomplete or contradictory evidence. Appellant's Br. at 9-10.

The appellant further contends that the Board erred by relying on the "time lost" calculation on his second DD-214 because it was made pursuant to 10 U.S.C. § 972 and not for the purpose of establishing eligibility for a VA benefit. Appellant's Br. at 11-16. Finally, the appellant describes the Board's conduct as inconsistent with the nonadversarial claims system and alleges further error in the Board's finding that VA had no duty to assist or notify him in this case. Appellant's Br. at 16-21.

The Secretary argues that the appellant's DD-214 forms clearly reveal that the appellant did not serve for 90 days and thus he cannot qualify for a non-service-connected pension. Secretary's Br. at 6. The Secretary asserts that, even if § 3.203(c) is potentially applicable in this case, it is overridden by the pension-specific provisions found in § 3.203(b) that, when applied to the facts of this case, indicate that the Secretary need not contact the Army and verify the nature of the appellant's service. Secretary's Br. at 7-8. Finally, the Secretary argues that, to the extent that the appellant disagrees with the information found on his DD-214 forms, his remedy lies with the Army Board of Correction of Military Records, not with VA. Secretary's Br. at 11.

### III. LAW

#### A. Pension

Pursuant to 38 U.S.C. § 1521(a), "[t]he Secretary shall pay to each veteran of a period of war who meets the service requirements of this section . . . pension at the rate prescribed by this section." "A veteran meets the service requirements" for a pension if he "served in the active military, naval, or air service . . . for ninety days or more during a period of war." 38 U.S.C. § 1521(j). The 90 days must be served while a veteran is on "active service," which excludes "time spent on industrial, agricultural, or indefinite furlough, time lost an absence without leave (without pay), under arrest

4

(without acquittal), in desertion, [and] while undergoing sentence of court-martial[.]"  38 C.F.R. § 3.15 (2013).

In this case, there is no dispute that the time between the appellant's entry into military service and discharge from military service was greater than 90 days and occurred during a period of war.  Whether the appellant is eligible for a pension, however, is entirely dependent on whether his service period included 90 days of active service.  As will be discussed below, the Board erred in determining that the appellant was not entitled to pension benefits without following the procedural mandate of the plain language of § 3.203.

## B. 38 C.F.R. § 3.203

In addition to prescribing the type of service that constitutes countable "qualifying" or "creditable" service, § 3.203 governs the type of evidence VA is to use when determining whether a veteran has the requisite service for entitlement to pension, disability compensation, dependency and indemnity compensation (DIC), or burial benefits. The parties' dispute centers upon the proper interpretation of § 3.203.  The appellant contends that the Board was required to follow the dictates of § 3.203(c) and obtain a complete statement of service before it could determine whether he had qualifying service for pension under section 1521.  The Secretary counters that § 3.203(c) is inapplicable because under § 3.203(b), VA could determine from the appellant's DD 214 that he had "4 months or more of service."  Secretary's Br. at 7-8.

The "interpretation of a . . . regulation is a question of law" that we "review de novo." *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003). The starting point in interpreting a regulation is its plain language, for "if the meaning of the regulation is clear from its language, that is 'the end of the matter.'"  *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)).  Although the plain language of a regulation controls its interpretation, words generally are not to be read in isolation; rather, they should be read in the context of the regulatory scheme. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ("The meaning–or ambiguity–of certain words or phrases may only become evident when placed in context."); *cf. Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").  Deference will only be afforded to the

Secretary's interpretation of his own regulation when the meaning of the regulation is unclear from its plain language. *See Smith v. Nicholson*, 451 F.3d 1344, 1349 (Fed. Cir. 2006) (citing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997)); *Mason v. Shinseki*, 26 Vet.App. 1, 6 (2012); *Tatum v. Shinseki*, 24 Vet.App. 139, 142 (2010).

Section 3.203 describes the types of evidence VA may rely on to establish eligibility for a non-service-connected pension and when it is required to contact a veteran's service department to confirm the nature and length of the veteran's service. It provides the following:

(a) Evidence submitted by a claimant. For the purpose of establishing entitlement to pension, compensation, dependency and indemnity compensation or burial benefits [VA] may accept evidence of service submitted by a claimant (or sent directly to [VA] by the service department), such as a DD Form 214, Certificate of Release or Discharge from Active Duty, or original Certificate of Discharge, without verification from the appropriate service department if the evidence meets the following conditions:

(1) The evidence is a document issued by the service department. A copy of an original document is acceptable if the copy was issued by the service department or if the copy was issued by a public custodian of records who certifies that it is a true and exact copy of the document in the custodian's custody or, if the copy was submitted by an accredited agent, attorney or service organization representative who has successfully completed VA-prescribed training on military records, and who certifies that it is a true and exact copy of either an original document or of a copy issued by the service department or a public custodian of records; and

(2) The document contains needed information as to length, time and character of service; and

(3) In the opinion of [VA] the document is genuine and the information contained in it is accurate.

(b) Additional requirements for pension claimants. In addition to meeting the requirements of paragraph (a) of this section, a document submitted to establish a creditable period of wartime service for pension entitlement may be accepted without verification if the document (or other evidence of record) shows:

(1) Service of 4 months or more; or

(2) Discharge for disability incurred in line of duty; or

(3) Ninety days creditable service based on records from the service department such as hospitalization for 90 days for a line of duty disability.

(c) Verification from the service department. When the claimant does not submit evidence of service or the evidence submitted does not meet the requirements of paragraph (a) of this section (and paragraph (b) of this section in pension claims), [VA] shall request verification of service from the service department. However, payment of nonservice-connected burial benefits may be authorized, if otherwise in order, based upon evidence of service which VA relied upon to authorize payment of compensation or pension during the veteran's lifetime, provided that there is no evidence which would serve to create doubt as to the correctness of that service evidence. If it appears that a length of service requirement may not be met (e.g., the 90 days wartime service requirement to receive pension under 38 U.S.C. 1521(j)), [VA] shall request a complete statement of service to determine if there are any periods of active service that are required to be excluded under [38 C.F.R.] § 3.15.

38 C.F.R. § 3.203 (2013).

*1. Subsections (a) and (b)*

It is apparent from a review of the regulation that subsections (a) and (b) of § 3.203 delineate the evidence that VA *may* accept without the need to obtain independent verification from the appropriate service department. The use of the word "may" in these subsections of the regulation indicates that VA's acceptance of the evidence is expressly committed to the Secretary's discretion. *See Gomez v. Principi,* 17 Vet.App. 369, 372 (2003) (determining that the use of the word "may" in 38 U.S.C. § 7105(d)(5) shows that the Board's exercise of discretion is "expressly permissive"); *Willis v. Brown,* 6 Vet.App. 433, 435 (1994) (use of word "may" in statute makes action discretionary); *see also Stewart v. Brown,* 10 Vet.App. 15, 18 (1997) (noting that an action is committed to the discretion of the Secretary where regulation uses word "may"). The Secretary's discretion, however, is not unfettered. Both subsections contain limiting clauses that constrain the Secretary's discretion to accept evidence to documents that meet certain conditions.

Under subsection (a), VA *may* accept a document containing evidence of the nature or length of a veteran's service (e.g., a copy of a veteran's DD-214) from a claimant or a service department, but only if that document was (1) issued by the service department; (2) certified by a public custodian of record; or (3) certified by an accredited agent, attorney, or service organization, *and* contains information describing the length, time, and character of service, *and* VA considers it to be

7

"genuine" and accurate.  38 C.F.R. § 3.203 (a)(1), (2), (3).

Subsection (b) applies to pension claims.  The Secretary may exercise his discretion to accept certain documents as evidence of the length and character of a veteran's service under subsection (b) only when the document he wishes to accept shows that the veteran had "[s]ervice of 4 months or more," *or* that his service branch discharged him for a disability incurred in line of duty, *or* that he had "[90] days creditable service based on records from the service department such as hospitalization for 90 days for a line-of-duty disability."  38 C.F.R. § 3.203 (b)(1), (2), (3).

Placed at issue by the parties in this case is the meaning of the phrase "service of 4 months or more" in subsection (b).  The appellant contends that this phrase refers to military service that may be counted as creditable service under § 3.15.  The Secretary counters that this phrase refers to *all* service, including service that may be excluded under § 3.15 and therefore not countable toward the 90-day service requirement.  The Court is not persuaded by the Secretary's argument. Subsection (b) sets forth the circumstances under which VA may accept a document "to establish a creditable period of wartime service for pension entitlement" without seeking verification from the service. This plain language shows that the purpose of subsection (b) is to allow VA to quickly process a pension claim with a document such as a DD-214 that, on its face, shows that the appellant satisfies the 90-day wartime service requirement.  A DD-214 that indicates that a veteran does not have the requisite number of countable service dates under § 3.15 could not possibly satisfy the purpose to be served by the regulation because it does not establish, on its face, that the appellant has a creditable period of wartime service for pension entitlement.

The Secretary's construction of the regulation would allow a veteran's DD-214 to be accepted by VA even though it shows that a veteran does not meet the requirements of § 3.15 simply because the DD-214 also shows that a veteran's overall service is of 4 months or more–a construction of the regulation that would obviate the need for subsection (c), in contravention of its mandatory instructions.  Such an interpretation violates the well-established interpretive canon that a "'statute [or regulation] should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. U.S.,* 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see Hornick v. Shinseki*, 24 Vet.App. 50, 52, 55 (2010) (explaining that "the plain  meaning of any statutory provision must be determined in light of the

statutory scheme as a whole" and the Court should interpret statutory provisions in the same subchapter of title 38 as producing a harmonious whole); *Cottle v. Principi,* 14 Vet.App. 329, 334 (2001) (each section or part of a statute should be construed with every other part of section to produce a harmonious whole (citing *Meeks v. West,* 12 Vet.App. 352, 354 (1999))). Accordingly, the Court holds that the plain language of the phrase "service of 4 months or more" is limited to creditable service that may be counted towards the 90-day wartime service requirement.

### 2. Verification under subsection (c)

Pursuant to subsection (c), VA "*shall* request verification of service from the service department" when the evidence does not meet the requirements of subsections (a) and (b) of the regulation. 38 C.F.R. § 3.203(c) (emphasis added). Also, in pension claims, VA *shall* obtain a "complete statement of service" from the service department when it "appears that a length of service requirement may not be met." *Id.* That statement must explain whether "there are any periods of active service that are required to be excluded under § 3.15." *Id.*

The repeated appearance of the word "shall" reveals that unlike subsections (a) and (b), subsection (c) is not discretionary. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 35 (1998) (holding that an "instruction [that] comes in terms of the mandatory 'shall' . . . normally creates an obligation impervious to . . . discretion." (citing *Anderson v. Yungkau,* 329 U.S. 482, 485, (1947)); *Malone v. Gober,* 10 Vet.App. 539, 544 (1997) (holding that the statutory use of the word "may" conveys discretion, while the use of the word "shall" does not).

Through the first sentence in subsection (c), the Secretary has made it clear that, unless it is apparent that the veteran meets the applicable service requirements and thus may benefit from the shortcut provided by subsections (a) and (b), the Secretary will not process his claim until his RO has obtained a service department statement verifying the veteran's service. In the last sentence of subsection (c), the Secretary promulgated a provision that specifically addresses cases when the evidence before him reveals that the claimant may not meet the length of service requirement for the benefit he seeks. When that situation arises, VA *must* contact the veteran's service department and inquire about his service. Moreover, when length of service is called into question, simple service verification is not sufficient. Instead, VA must obtain a "complete statement of service." This, combined with the special provisions for pension cases found in subsection (b), conveys the care the

9

Secretary took to make sure that he will be fully and accurately informed about the length and nature of a veteran's service before he decides if that veteran is entitled to a pension. The Secretary has made plain that he will not reject a veteran's pension claim for failure to meet a length of service requirement until he has before him a complete service department statement describing the veteran's service.

## IV. APPLICATION OF 38 C.F.R. § 3.203

Because the Court has concluded that the phrase "service of 4 months or more" is limited to creditable service that may be counted towards the 90-day wartime service requirement, and the appellant's most recent DD-214 indicates just one month and nine days of this type of service (R. at 591), the Court agrees with the appellant that his DD-214 does not satisfy § 3.203(b). The Board's finding that the appellant lacked the requisite service time was improperly made because § 3.203 requires VA to seek a verification of a claimant's service prior to making a finding as to whether such a claimant meets the 90-day service requirement. Although VA sought verification of the appellant's service in February 2006, prior to the initial determination granting the non-service-connected pension, this request was made before VA realized that the length of the appellant's service was potentially at issue for pension purposes. R. at 545-46. More importantly, the actual verification of the appellant's service fell short of what was required by regulation. The Secretary merely asked the Army to confirm service dates, and the Army tersely responded that "all service information has been verified as correct." *See id.* This cannot possibly be a "complete statement of service" required by subsection (c) in cases such as these. The Board therefore erred in failing to follow the procedural mandate of § 3.203.

To the extent that the Secretary suggests that the Board's failure to obtain necessary evidence is at most a harmless error, the Court disagrees. There is no way of knowing whether the record supports his claim without properly developing the record, and consequently there is no way of determining whether the appellant was harmed by VA's failure to obtain a complete statement of his service. *See Moore v. Shinseki,* 555 F.3d 1369, 1375 (Fed. Cir. 2009) (rejecting the Secretary's harmless error argument on its failure to obtain records:"We fail to understand how the government, without examining the . . . records, can have any idea as to whether they would, or would not,

10

support [the appellant's] claim"). Additionally, because the Court is reversing the Board decision, the Court will not address the appellant's other argument regarding the impact of 10 U.S.C. § 972 on his countable service time. *Cf. Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order) (holding that "a narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and of course, before this Court in an appeal, should the Board rule against him").

## V. REMEDY

Importantly, this appeal stems from a June 2008 RO decision eliminating a previous grant of non-service-connected pension benefits. Once VA has awarded a benefit, it may only take away that benefit through a finding that the original determination was clearly and unmistakably erroneous. 38 C.F.R. § 3.105(a), (h) (2013). Although the propriety of a VA determination severing a non-service-connected pension is a matter of first impression, the Court has held that VA's failure to observe applicable law and consider all relevant evidence renders reduction or severance decisions of other benefits "void ab initio" and requires that they be "set . . . aside as 'not in accordance with law.'" *Brown v. Brown*, 5 Vet.App. 413, 422 (1993) (reversing Board's reduction of disability rating and remanding for Board to reinstate prior rating) (quoting 38 U.S.C. § 7261(a)(3)(A)); *see Wilson v. West*, 11 Vet.App. 383, 386-87 (1998) (applying the same principle to a case involving severance of service connection). Moreover, in *Schafrath v. Derwinski*, 1 Vet.App. 589, 596 (1991), after concluding that the Board had "failed to provide an adequate statement of the reasons or bases for aspects of its decision" reducing that appellant's rating and noting that "the decision would normally be vacated and the matter remanded," the Court reversed the Board decision and remanded the case "with instructions that [the] appellant's disability rating . . . be reinstated" because it was "a reduction case, not an increase case."

The Court discerns no meaningful difference between the benefits in those cases and a non-service-connected pension when VA attempts to stop or reduce payment to a veteran. Because VA failed to comply with 38 C.F.R. § 3.203(c), the June 2008 RO decision discontinuing the appellant's pension is void ab initio.

VA remains free to attempt to sever the appellant's non-service-connected pension again;

11

however, such severance must comply with all applicable law and be based upon all acquired evidence, as required by 38 C.F.R. § 3.105(d). *See Schafrath*, *supra.* Naturally, this means that the RO should not issue another severance decision before the Secretary has sought a complete statement describing the appellant's service from the Army.

## VI. CONCLUSION

After consideration of the appellant's and the Secretary's pleadings, and a review of the record, the Board's February 2012 is REVERSED and the matter is REMANDED for the Board to reinstate the appellant's non-service-connected pension benefit effective February 1, 2008. The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring the Secretary to provide for "expeditious treatment" of claims remanded by the Court).