# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-1692

JOHN D. MCCAULEY, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided May 20, 2024)

*Daniel S. Bretzius*, of Concord, New Hampshire, was on the brief for the appellant.

*Richard J. Hipolit*, Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; *Carolyn F. Washington*, Deputy Chief Counsel; and *Katelyn N. Lancto*, all of Washington, D.C., were on the brief for the appellee.

Before MEREDITH, FALVEY, and JAQUITH, *Judges*.

FALVEY, *Judge*: Marine Corps veteran John D. McCauley, through counsel, appeals a February 16, 2023, Board of Veterans' Appeals decision that found proper the severance of service connection for type II diabetes, coronary artery disease (CAD) post coronary artery bypass graft, coronary artery bypass graft scars, a non-linear superficial anterior trunk scar, a left lower extremity scar, and a right lower extremity scar. The Board also denied service connection for numbness and tingling of the extremities. His appeal is timely and within our jurisdiction. *See* 38 U.S.C. §§ 7252(a), 7266(a).

We sent this appeal to panel because it presents a unique question: if service connection was granted on one theory that was later found to be clearly and unmistakably erroneous, must the Board address alternative theories of entitlement that are raised by the claimant or reasonably raised by the record before upholding severance of service connection? As we explain, we hold that it must. This means that the severance standards of 38 C.F.R. § 3.105(d) require that the Secretary prove that service connection cannot be granted or maintained under any reasonably raised theory for severance of service connection to be proper.

Applied to the facts here, we find that the Secretary did not meet this burden. Despite a VA regional office (RO) specifically flagging the need to resolve a theory of service connection based

on exposure to contaminated water at Camp Lejeune on appeal, the Board found that severance was proper without considering this theory. Thus, we will reverse the parts of the Board decision that found that severance of service connection for diabetes, CAD, and various scars was proper and remand these matters with instructions for the Board to reinstate service connection retroactive to the date of severance. And because Mr. McCauley's claim for numbness and tingling of the extremities is claimed as secondary to diabetes, we will remand this claim as well.

## I. BACKGROUND

Mr. McCauley served on active duty from October 1960 to June 1965. Record (R.) at 3356. This included service at Camp Lejeune from September 1961 to July 1962, service aboard the USS *Thomaston* from April 1963 to May 1963, and service aboard the USS *Comstock* in May 1963. *See* R. at 86, 868.

He filed a claim for heart disease in August 2016. R. at 3361-62. He contended that his heart disease was caused either by exposure to contaminated water at Camp Lejeune or herbicide exposure near Vietnam. *Id.* In November 2016, VA found that Mr. McCauley's claim of herbicide exposure was not verified because his military records did not show service in an area of known herbicide use or storage. R. at 3139. But the RO issued a rating decision in January 2017 that granted service connection for diabetes and CAD "on the basis of presumption due to Agent Orange exposure." R. at 2861-62. The RO acknowledged that Mr. McCauley had also argued that his CAD was caused by exposure to contaminated water, but the RO declined to address this argument because it was "a moot point as [he was] being service connected . . . due to [his] exposure to Agent Orange," and "[c]ompensation is the same regardless of how [he was] exposed." R. at 2861. The RO also granted service connection for coronary artery bypass grafting scars, an anterior trunk scar, and left and right lower extremity scars, all secondary to CAD. R. at 2862-65.

But the RO sent Mr. McCauley a letter 2 months later, in March 2017, to inform him of its proposal to sever service connection for his disabilities. R. at 2825. The RO explained that, when it granted service connection, it had presumed that Mr. McCauley was exposed to herbicides while serving on the USS *Comstock*. R. at 2809-13. But the RO noted that the *Comstock* was not in the inland waterways of the Republic of Vietnam while Mr. McCauley was onboard. *Id.* Thus, the RO concluded that it erred in granting service connection on a presumptive basis. *Id.*

2

The RO enacted its proposal in a February 2018 rating decision that severed service connection for Mr. McCauley's claimed disabilities, effective May 1, 2018. R. at 2436-37. The next month, Mr. McCauley filed a Notice of Disagreement. R. at 2418.

The RO issued a deferred rating decision in September 2019 that acknowledged that VA had not addressed Mr. McCauley's contention that his disabilities were caused by contaminated water at Camp Lejeune. R. at 1783. The RO explained that his contention "should have been considered prior to severance, and now needs to be considered as part of the appeal of severance." *Id.* The decision reflects that Mr. McCauley's appeal was therefore "transferred to the Louisville[, Kentucky,] RO." *Id.*

The next year, in October 2020, the RO asked the National Archives and Records Administration to provide any evidence that the ships that Mr. McCauley served aboard entered the territorial sea of the Republic of Vietnam. R. at 860-61. The RO stated that it had the deck logs from the USS *Thomaston* and that they did not show that the ship entered within 12 miles of the Republic of Vietnam. R. at 861. This led to a VA memorandum in May 2022 that found that herbicide exposure could not be conceded because evidence did not show that he had duty in the Republic of Vietnam, its inland waterways, or eligible waters offshore. R. at 824.

VA then issued a June 2022 Statement of the Case (SOC) that purported to address Mr. McCauley's entitlement to service connection based on the contaminated water at Camp Lejeune. R. at 86-91. The RO wrote that "[w]e sent you a letter indicating we may consider that [your disabilities] are associated with contaminants in the water supply at Camp Lejeune if you send us scientific or medical evidence showing that the claimed condition is medically associated wit[h] exposure to the contaminants . . . To-date, we have not received a response." R. at 87. Thus, VA continued to deny service connection for Mr. McCauley's severed disabilities. R. at 86-89. It also continued to deny service connection for numbness and tingling of all extremities. *Id.* Mr. McCauley appealed to the Board, leading to the Board decision on appeal. R. at 58.

In that February 2023 decision, the Board explained that, generally, veterans who served in the territorial sea of the Republic of Vietnam are presumed to have been exposed to an herbicide agent. R. at 12. But the Board found that "[i]t is clear and unmistakable that [Mr. McCauley] did not serve" in the Republic of Vietnam or its territorial sea. R. at 15. The Board also found that there was no sign that service connection for his claimed disabilities could be granted on any other basis. R. at 15-16, 19. Thus, the Board concluded that severance of service connection for diabetes,

3

CAD, and scars was proper. R. at 5, 15. The Board then explained that Mr. McCauley's disability manifested by numbness and tingling of the extremities was diagnosed as diabetic peripheral neuropathy. R. at 17. And because the Board found that Mr. McCauley's diabetes was unrelated to service, it thus denied his claim for numbness and tingling of the extremities. *Id.* There is no mention in the decision of exposure to contaminated water at Camp Lejeune. This appeal followed.

## II. ANALYSIS

Among other things, Mr. McCauley argues that, to determine whether severance was proper, the Board needed to address whether his diabetes, CAD, and scars were caused by exposure to contaminated water at Camp Lejeune. Appellant's Brief (Br.) at 11-12. Because it did not, Mr. McCauley contends that severance is void ab initio—a legal nullity—and asks the Court to reinstate service connection. *Id.* at 14; Reply Br. at 5-6. The Secretary concedes an error but, as he sees it, the error does not void the severance. The Secretary admits that the Board erred in not addressing Mr. McCauley's argument about exposure to contaminated water at Camp Lejeune, but he believes that we should remand this matter for the Board to do so, not reverse the Board's severance decision and remand with instructions for the Board to reinstate service connection. Secretary's Br. at 6-7.

The parties' dispute comes down to this: must the Board address alternative theories of entitlement before upholding severance of service connection? In other words, what is the extent of the Secretary's burden in severance cases—must he prove only that service connection on the theory under which it was granted is erroneous, or must he also prove that service connection cannot be granted based on any theory raised by the claimant or the record?

To answer this question, we start by reviewing general principles that govern severance and then consider how they apply when there are other potential theories of service connection in play.

### A. Severance Principles

VA's regulation that governs severance—§ 3.105(d)—explains that "service connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (the burden of proof being on the Government)." 38 C.F.R. § 3.105(d) (2023). Severance of service connection based on any standard lower than this is erroneous as a matter of law. *Stallworth v. Nicholson*, 20 Vet.App. 482, 488 (2006). If service connection is severed despite the Secretary not

4

having met his burden, the severance is void ab initio—a legal nullity. *See King v. Shinseki*, 26 Vet.App. 484, 492 (2014) (explaining that VA's failure to observe applicable law when severing benefits renders the severance void ab initio); *Wilson v. West*, 11 Vet.App. 383, 386-87 (1998) (finding a termination of benefits "fatally flawed" because VA failed to apply the provisions of § 3.105(d) when it severed service connection). When that happens, the proper remedy is for us to reverse the Board decision with instructions to reinstate service connection for the severed disabilities, retroactive to the date of severance. *King*, 26 Vet.App. at 492-93.

But what does it mean for the Secretary to meet his burden? And what exactly is that burden in a severance case? The regulation tells us that the Secretary must show that service connection "is clearly and unmistakably erroneous." 38 C.F.R. § 3.105(d). And we have sometimes equated the Secretary's burden when severing service connection to a claimant's burden when proving clear and unmistakable error (CUE) in a final decision. *See, e.g.*, *Wilson*, 11 Vet.App. at 386-87. Yet there is an important difference between the two standards.

A CUE challenge is retrospective—did VA commit clear and unmistakable error when it denied benefits? And because the challenge is retrospective, the claimant must show that when VA denied benefits, it made an error based on the record and the law that existed at the time of the decision. *Russell v. Principi*, 3 Vet.App. 310, 314 (1992) (en banc). After all, it would be hard to blame VA for not considering evidence it did not yet have or for not applying a law not yet in effect.

Unlike CUE, severance is anchored in the present. As the regulation says, "service connection will be severed only where evidence establishes that it *is* clearly and unmistakably erroneous." 38 C.F.R. § 3.105(d) (emphasis added). This means that the Secretary must prove that it is currently clearly and unmistakably erroneous for the claimant to be service connected. *See Stallworth*, 20 Vet.App. at 488 ("[T]he severance decision focuses—not on whether the original decision *was* clearly erroneous—but on whether the current 'evidence establishes that [service connection] *is* clearly erroneous.'" (quoting 38 C.F.R. § 3.105(d) (second alteration in original)). This means that the Secretary's job is not done if he only shows that the theory on which service connection was originally granted was erroneous—that would not necessarily prove that maintaining service connection *is* clearly erroneous. To prove that service connection is currently clearly erroneous, the Secretary needs to show that service connection cannot be granted or maintained *under any theory*. After all, if unresolved theories could maintain service connection,

5

the Secretary cannot show that service connection "is clearly and unmistakably erroneous." 38 C.F.R. § 3.105(d).

But, as our caselaw makes clear, this does not mean that VA must perform "the impossible task of inventing and rejecting every conceivable" alternative theory for service connection for severance to be proper. *Robinson v. Peake*, 21 Vet.App. 545, 553 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). Instead, when a severance decision is appealed, VA, in determining whether severance was proper, need only address any theories raised by the claimant or the record. *See id.* at 552-53. Thus, if the claimant or the record raised an alternate theory of service connection, VA needs to run that theory to ground and determine whether it can lead to benefits before upholding a decision to sever service connection. To do otherwise would mean that the Secretary is shirking his burden under § 3.105(d). When this happens—that is, when the Secretary abandons his burden in a severance case—the appropriate remedy is for us to find severance void ab initio and have VA reinstate service connection for the severed disabilities. *King*, 26 Vet.App. at 492-93.

Tying this all together, we see that in considering whether severance of service connection is proper, the Board must address alternative theories of entitlement that are raised by the claimant or reasonably raised by the record. If the Board upholds a severance decision without doing so, it has failed to satisfy the severance standards of § 3.105(d). And this means that the severance is void ab initio. For us, this means that when we review such a case, we will reverse the Board's finding that severance was proper and remand the matter to the Board with instructions to reinstate service connection retroactive to the date of severance.

### B. Application

Applying this to Mr. McCauley's case yields a straight-forward analysis. When Mr. McCauley sought benefits, he stated that his heart disease was caused either by exposure to contaminated water at Camp Lejeune or herbicide exposure near Vietnam. R. at 3350, 3361-62. The RO decision that granted service connection was based on presumptive herbicide exposure; it did not address whether the theory of exposure to contaminated water at Camp Lejeune could lead to service connection. We don't fault VA for not addressing this theory—there was no reason for it to consider whether additional arguments could yield the same benefits it was already granting. But the Secretary's burden in severing benefits requires that he show that service connection *is* clearly erroneous. And here, this means that, when the Board considered Mr. McCauley's challenge

6

of the severance decision, the Board needed to address whether he could maintain service connection based on the raised but unresolved theory of exposure to contaminated water at Camp Lejeune.

Here, the RO did not address this theory in the February 2018 rating decision that severed service connection. It seemed to recognize its mistake in the September 2019 deferred rating decision; the RO acknowledged that the theory "should have been considered prior to severance, and now needs to be considered as part of the appeal of severance." R. at 1783. Rather than address the theory head on, however, the RO seemed to pass it on to the Board.

True, the RO acknowledged the theory in the June 2022 SOC, but said it would only consider it if Mr. McCauley submitted evidence of a nexus between exposure and his disabilities. Recall that VA told him that "[w]e sent you a letter indicating we may consider that [your claimed disabilities] are associated with contaminants in the water supply at Camp Lejeune if you send us scientific or medical evidence showing that the claimed condition[s are] medical associated wit[h] exposure to the contaminants. . . . To-date, we have not received a response." R. at 87, 89.

We need not delve into whether this brief acknowledgment from the RO sufficiently considers whether Mr. McCauley could maintain service connection under the theory of exposure to contaminated water at Camp Lejeune, because when he appealed to the Board, he indicated that he was appealing all issues addressed in the SOC, R. at 58, but the Board ignored the Camp Lejeune line of inquiry. The Board found that severance was proper without mentioning contaminated water at Camp Lejeune and with no consideration of whether Mr. McCauley could maintain service connection under this theory. Because the Board upheld a severance without ensuring that service connection *is* clearly erroneous—the standard required by § 3.105(d)—the severance is void. *See King*, 26 Vet.App. at 492; *Stallworth*, 20 Vet.App. at 488.

Even so, the Secretary asks us to remand the matter. He admits that the Board needed to address the theory of contaminated water at Camp Lejeune. But he believes the Board's failure to do so calls for us to remand to have the Board address the theory, not for us to outright reinstate service connection. Secretary's Br. at 7. At first blush, this makes sense. In most instances when the Board neglects to address a reasonably raised theory of entitlement, we generally send the claim back to the Board so that it may so do in the first instance. *See Robinson*, 557 F.3d at 1362. But the Secretary's framing undersells the Board's error here and misunderstands the unique nature of severance cases.

7

There is a difference between regular service connection or "increase cases"—cases in which a veteran seeks a benefit—and cases in which VA is trying to reduce or take away a benefit. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 596 (1991). Most of the appeals we see are cases in which it is the veteran trying to prove his or her right to a benefit. And in those cases, if the Board fails to address an expressly or reasonably raised argument, we typically remand the claim[1] for the Board to do so in the first instance. *See Barringer v. Peake*, 22 Vet.App. 242, 245 (2008). But severance cases are different—the burden is on *the Secretary* to prove that the severance is warranted. If the Secretary fails to meet this burden but still severs service connection, his failure to satisfy the standard of § 3.105(d) means the severance is void ab initio. *King*, 26 Vet.App. at 492. And if the severance is void, we send the case back to have VA reinstate the benefit. *Id*.

That's what happened here. The Board failed to consider a properly raised theory of service connection. This means it failed to show that service connection "is clearly and unmistakably erroneous." 38 C.F.R. § 3.105(d). Thus, the Board failed to follow the standards laid out in § 3.105(d) when it upheld the severance of benefits. For this reason, VA's severance is void ab initio and the proper remedy is to reverse the Board's finding that severance was proper and remand the matter to the Board with instructions to reinstate service connection. So that is what we do here; we hold that the Board erred by failing to prove that another expressly raised theory of service connection would not support a grant of benefits before upholding the severance of service connection. And because this means that severance is void, we reverse the Board's finding that severance was proper and remand the matters of benefits for diabetes, CAD, and various scars

---

[1] Of course, the Court must "take due account of the rule of prejudicial error" before remanding based on Board error. 38 U.S.C. § 7261(b)(2); *see Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error).

back to the Board with instructions to reinstate service connection retroactive to the date of severance, May 1, 2018.[2] *See King*, 26 Vet.App. at 492.

Before we conclude our severance analysis, we note that our decision does not prevent the Secretary from again attempting to sever service connection for Mr. McCauley's disabilities. *See King*, 26 Vet.App. at 493. But "[w]hen and if the Secretary elects to do so, he will be required to proceed prospectively in a manner consistent with this opinion." *Schafrath*, 1 Vet.App. at 596.

### C. Service Connection for Numbness and Tingling of the Extremities

This brings us to back to some common ground between the parties. Both agree that we should remand Mr. McCauley's claim for numbness and tingling of the extremities because it is intertwined with his diabetes claim. Appellant's Br. at 13; Secretary's Br. at 8. We agree with the parties.

The Board stated that Mr. McCauley's disability manifested by numbness and tingling of the extremities was diagnosed as diabetic peripheral neuropathy. And because service connection for diabetes was severed as unrelated to service, the Board denied his claim for diabetic peripheral neuropathy. R. at 17. But, after this decision, Mr. McCauley will be service connected for diabetes again. So we will remand his numbness and tingling claim so that the Board can consider it alongside the restored service connection for diabetes. *See Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001) (explaining that when "two claims are sufficiently intertwined . . . they should be considered together").

---

[2] This is not to say that *any* error by the Board means that severance is void or requires reversal. Instead, our disposition relies on the established rule that severance is void if VA fails to follow the standards of § 3.105(d). *See, e.g.*, *Hedgepeth v. Wilkie*, 30 Vet.App. 318, 328-29 (2018) (finding severance void because VA failed to adhere to § 3.105(d) when it incorrectly shifted the burden of proof from the Secretary to the appellant); *Wilson*, 11 Vet.App. at 386-87 (finding severance void because VA failed to give notice of proposed severance as required by § 3.105(d)). But admittedly, our caselaw has been less clear about what happens when the Board makes an error in a severance case that does not contravene the standards of § 3.105(d). *See, e.g.*, *King*, 26 Vet.App. at 492-93 (suggesting that a reasons-or-bases error voids severance and requires that we instruct the Board to reinstate service connection).

In *Stern v. McDonough*, we explored this issue in the context of reduction cases and gave examples when we have found a reduction void and reversed the Board decision upholding reduction, versus when we have remanded without finding the reduction void. 34 Vet.App. 51, 56-59 (2021). But we did not draw a firm line between reversable and remandable errors in reduction cases—it was unnecessary to do so to decide the case. *Id.* at 60 ("[T]he Court need not decide today where the line must be drawn between remandable and reversible Board errors."). The same holds true today; we need not yet draw the line in severance cases. We leave that work for another day.

9

D. Additional Arguments

Mr. McCauley makes several other arguments. For example, he contends that the Board needed to provide him a medical examination to evaluate whether his disabilities were caused by contaminated water at Camp Lejeune. Appellant's Br. at 12. And he argues that VA failed to satisfy its duty to assist and the Board erred when it found that the USS *Thomaston* did not operate in the territorial sea of the Republic of Vietnam while he was onboard because it overlooked evidence in ship's deck logs. *Id.* at 7-11. But we need not now address these arguments because they would lead to no greater remedy than what we have already provided; Mr. McCauley's grant of service connection is being restored.[3] *See Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order).

Mr. McCauley also argues that, not only did the Board err by not reinstating service connection for his severed disabilities, it violated its duty to maximize benefits by not increasing his previously assigned ratings for diabetes and CAD. Appellant's Br. at 13-14. This argument is a bit premature. The Board found that severance of service connection was proper. And we can't say that the Board erred in not increasing his ratings with no ratings for the Board to increase. But, because we are remanding the matters of diabetes and CAD with instructions to reinstate the severed benefits, he can argue for a higher rating at the Board if he believes the issue is properly before the Board.

**III. CONCLUSION**

Based on the above, the parts of the February 16, 2023, Board decision that found proper the severance of service connection for diabetes, CAD, coronary artery bypass graft scars, a non-linear superficial anterior trunk scar, a left lower extremity scar, and a right lower extremity scar are REVERSED. These matters are REMANDED with instructions for the Board to reinstate service connection for these disabilities retroactive to May 1, 2018. The part of the Board decision

---

[3] Although we are not addressing Mr. McCauley's arguments concerning service connection based on presumptive herbicide exposure aboard the USS *Thomaston*, we note that the Secretary acknowledged that in December 2023, after the Board decision on appeal, VA changed how it processes claims involving shipboard service and herbicide exposure. Claims of herbicide exposure in Republic of Vietnam nautical locations or nautical-based service are now developed and researched by centralized processing teams to determine whether a veteran's shipboard service qualifies for presumptive herbicide exposure. Secretary's Br. at 15; *see VA Adjudication Procedures Manual*, M21-1, pt. VIII, subpt. i, ch. 1, § A(1)(c)-(e) (change date Dec. 4, 2023). Should the Secretary attempt to sever service connection in the future, we expect that he will not do so until a centralized processing team has researched and developed Mr. McCauley's USS *Thomaston* arguments in accordance with the M21-1.

that denied service connection for numbness and tingling of the extremities is SET ASIDE, and the matter is REMANDED.