# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 24-0270

RICHARD A. STEWART, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 17, 2025)                                      Decided September 8, 2025)

*Amy F. Odom*, with whom *David J. Giza* was on the brief, both of Providence, Rhode Island, for the appellant.

*Brian S. Carey*, with whom *Richard J. Hipolit*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy, Jr.*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENBERG, MEREDITH, and JAQUITH, *Judges*.

MEREDITH, *Judge*: The appellant, Richard A. Stewart, through counsel appeals a November 1, 2023, Board of Veterans' Appeals (Board) decision that (1) determined that severance of special monthly compensation (SMC) based on housebound status was proper, (2) found that a later effective date, August 1, 2023, rather than February 28, 2018, was warranted for that severance, and (3) dismissed as moot the matter of entitlement to an effective date earlier than February 28, 2018, for the initial award of SMC based on housebound status. Record (R.) at 4-31.[1] This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).

---

[1] The Board also granted entitlement to an October 2, 2012, effective date for the award of a total disability rating based on individual unemployability (TDIU) and for eligibility for dependents' educational assistance; disability ratings of 20% each from October 2, 2012, for right and left lower extremity sciatic nerve radiculopathy; and a disability rating of 20% for left lower extremity femoral nerve radiculopathy, from February 28, 2018. The Board's awards are favorable findings that the Court may not disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009); *see also Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam order) ("This Court's jurisdiction is confined to the review of final Board . . . decisions which are adverse to a claimant."). The Board denied entitlement to (1) an effective date prior to October 2, 2012, for the award of benefits for an acquired psychiatric disorder, including post-traumatic stress disorder (PTSD); (2) a compensable rating for a posterior trunk scar; (3) a rating in excess of 30% prior to November 1, 2016, and in excess of 50% thereafter for an acquired psychiatric disorder, to include PTSD; (4) a rating in excess of 40% for a back disability; (5) a rating in excess of 20% for left lower extremity sciatic nerve radiculopathy; (6) a rating in

After the Court obtained supplemental briefing, this matter was referred to a panel in May 2025 to determine whether, when VA discontinues SMC based on clear and unmistakable error (CUE) in a prior favorable finding, the Board may uphold the discontinuance based on a different theory of CUE than that identified by the agency of original jurisdiction (AOJ),[2] and whether discontinuance of SMC is more akin to a rating reduction or to a severance of service connection. The Court heard oral argument on July 17, 2025.

For the following reasons, the Court holds that the procedures for severing service connection do not apply to discontinuing SMC. In light of the Board's error in relying on the severance standard, along with other errors conceded by the Secretary, the Court concludes that VA did not carry its burden of showing that discontinuance of SMC was proper. Accordingly, the Court will reverse that part of the Board's decision that discontinued SMC based on housebound status, effective August 1, 2023,[3] and remand this matter with instructions to reinstate that benefit as of that date. In addition, the Court will vacate that part of the Board's decision that dismissed as moot the inextricably intertwined matter of entitlement to an effective date earlier than February 28, 2018, for the award of SMC, and the Court will remand that matter for further proceedings consistent with this decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Marine Corps from July 1963 to July 1967. R. at 3211. In June 2022, a VA regional office (RO) awarded a TDIU rating "on account of [the appellant's] service[-]connected [PTSD], alcohol use disorder," effective November 3, 2021. R. at 1166; *see* R. at 1164-70, 1192-96. The RO also continued the assigned 50% rating for PTSD. R. at 1166-67. The appellant sought higher-level review (HLR) of that decision. R. at 1149-51.

---

excess of 20% for right lower extremity sciatic nerve radiculopathy; (7) an effective date prior to February 28, 2018, for the 20% rating for left lower extremity femoral nerve radiculopathy; and (8) a rating in excess of 20% for right lower extremity femoral nerve radiculopathy. The appellant challenges only those parts of the Board's decision that relate to SMC; accordingly, he has abandoned his appeal as to these eight denied matters, and the Court will dismiss the appeal as to those matters. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

[2] As explained below, because the Board here applied an incorrect standard in assessing whether to discontinue the appellant's SMC and because the Court concludes that reversal is warranted, the Court does not reach the question of what would be within the scope of a VA-initiated CUE attack under a different standard.

[3] The Board, in the decision on appeal, reinstated SMC from February 28, 2018, to August 1, 2023. R. at 20. The Court will not disturb that favorable finding. *See Medrano*, 21 Vet.App. at 170.

2

In a September 2022 HLR decision, the RO granted an earlier effective date of February 28, 2018, for the award of TDIU and found that the appellant met the criteria for SMC under 38 U.S.C. § 1114(s) (SMC(s))[4] based on housebound status as of that date. R. at 1103-14, 1141-45. The RO explained that SMC(s) was warranted because TDIU was granted based on a single condition—PTSD—and "[the appellant's] other service[-]connected conditions are ratable at 60[%] or more." R. at 1106. Of note, in granting an earlier effective date for TDIU, the RO stated: "[Y]ou are unable to work due to your [PTSD]. Your back condition and radiculopathy conditions are service connected[,] and their evaluations assist in your overall combined percentage and . . . help you meet the overall schedular requirements for this benefit." R. at 1105.

Several months later, in February 2023, the RO found that the award of SMC(s) was CUE, and therefore the RO proposed to discontinue that benefit from February 28, 2018. R. at 750-54. The RO reasoned as follows:

> [TDIU] may be assigned where the schedular rating is less than total if it is found that the disabled person is unable to secure or follow a substantially gainful occupation [either 1)] as a result of . . . a single service-connected disability ratable at 60[%] or more, or 2) as a result of two or more disabilities, provided at least one disability is ratable at 40[%] or more, and there is sufficient additional service-connected disability to bring the combined rating to 70[%] or more. . . .
>
> The rating decision dated [June 22], 2022, granted [TDIU] based on the single condition of [PTSD], which was rated at 50%, so the requirements [of 38 C.F.R. § 4.16(a)] for a single disability rated at 60[%] or more were not met. [TDIU] was therefore granted as a result of two or more disabilities, where at least one disability is ratable at 40[%] or more, and there is sufficient additional service-connected disability to bring the combined rating to 70[%] or more.
>
> The rating decision dated September 5, 2022, incorrectly established [entitlement to] [SMC(s)] based on housebound criteria. We have denied entitlement to [SMC(s)] because the evidence shows [that] you [do] not . . . have a single service[-]connected disability rated 100[%] and a separate service-connected disability or disabilities independently rated 60[%] or more.

R. at 751-52 (citations omitted). The RO effectuated the discontinuance in a May 2023 decision, effective February 28, 2018. R. at 308-10.

---

[4] As pertinent here, entitlement to SMC under 38 U.S.C. § 1114(s) is warranted if the veteran "has a service-connected disability rated as total, and . . . has additional service-connected disability or disabilities independently ratable at 60% or more." 38 U.S.C. § 1114(s)(1). The Court will generally refer to these two components of SMC(s) as "the 100% requirement" and "the 60% requirement."

Through current counsel, the appellant appealed the May 2023 decision, R. at 244-45, arguing that "there is no requirement that [his] PTSD be rated more than 50[%] for him to qualify for SMC(s)" and noting that "[t]he requirements are (1) for one single disability to qualify as totally disabling, and (2) for the other disabilities to combine to 60[%] or more," R. at 242 (citing *Bradley v. Peake*, 22 Vet.App. 280, 289-90 (2008); 38 C.F.R. § 3.350(i) (2023)). He further asserted that "[i]t appears [that] VA has [discontinued] SMC(s) for no reason besides the fact that it granted [him] TDIU based on his PTSD alone, which was only rated 50[%]," but he maintained that "[g]ranting TDIU under the provisions of 38 C.F.R. § 4.16(b) is not [CUE]," given that "[t]he law expressly instructs VA to do so." *Id.* He asked VA to restore entitlement to SMC(s) from February 2018. R. at 243.

In the November 2023 decision on appeal, the Board first outlined the two requirements for SMC(s) relevant to this matter—that, "in addition to a single, permanent service-connected disability rated 100[%] disabling, [a veteran have] additional service-connected disability or disabilities independently ratable at 60[%]," R. at 17—and the Board noted that the RO had proposed to "sever service connection" because the initial award of SMC(s) had been made "in error," R. at 18. The Board then cited the relevant law as 38 C.F.R. § 3.105(d), stating that "[p]reviously granted benefits will be severed only where evidence establishes that the award of service connection was [CUE]." *Id.* The Board also summarized the requirements for establishing CUE and noted that, "[i]n most respects, the CUE standard under § 3.105(d) is equivalent to the CUE standard for reversing or revising a prior final decision under 38 C.F.R. § 3.105(a)." R. at 19. After finding that VA complied with the due process requirements of § 3.105(d), the Board noted that the RO incorrectly severed SMC(s) as of February 28, 2018, and the Board therefore amended the effective date of severance to August 1, 2023. R. at 20.

Turning to the question of "whether the grant of SMC benefits was CUE," the Board found that it was. *Id.* The Board provided the following discussion:

> While the [appellant] has been granted a TDIU [rating], which can constitute a single service[-]connected disability, none of his other disabilities are rated as 60[%] or greater, even when considering the combined effect of his bilateral lower extremity radiculopathy. Contrary to what the [appellant] argues, the standard is not that his other separate service[-]connected disabilities combine to equal greater than 60[%]. Rather, one other single disability must be rated as 60[%] or greater.
>
> . . . .

4

> At the time the [appellant] was granted SMC benefits, the RO improperly applied the statutory and regulatory provisions, combining [his] remaining disabilities to qualify as a separate, service[-]connected disability rated as greater than 60[%].

R. at 21 (citation omitted). The Board explained that the RO's error "manifestly changed the outcome of the decision[ because,] had the RO not erroneously combined disabilities, the [appellant] would not have been granted SMC[(s)] as meeting the statutory requirements." *Id.* The Board then found that, because the appellant had not been entitled to SMC(s) in the first place and the RO correctly severed the benefit, the issue of the proper effective date for the award of that benefit was moot, and the Board therefore dismissed the appeal as to that matter. R. at 5, 22. This appeal followed.

## II. ANALYSIS

As explained below, the parties agree that the Board committed a number of errors in the decision on appeal, but they disagree on the appropriate remedy. Resolving this dispute requires the panel to consider (1) whether SMC constitutes service connection, which in turn controls the provision of law under which VA may seek to discontinue it, and (2) under what circumstances, if any, VA should be afforded an additional opportunity to seek to discontinue those benefits.

### A. Legal Landscape

#### 1. TDIU

TDIU may be assigned to a veteran who meets certain disability percentage thresholds and is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a) (2025). More specifically, "if there is only one such disability, this disability shall be ratable at 60[%] or more, and . . . if there are two or more disabilities, there shall be at least one disability ratable at 40[%] or more, and sufficient additional disability to bring the combined rating to 70[%] or more." *Id.* If a veteran fails to meet the percentage standards set forth in § 4.16(a) but there is "sufficient evidence to substantiate a reasonable possibility that a veteran is unemployable by reason of his or her service-connected disabilities," *Ray v. Wilkie*, 31 Vet.App. 58, 66 (2019), the matter should be submitted to the Director of the Compensation Service for extraschedular consideration. 38 C.F.R. § 4.16(b).

5

### 2. SMC

SMC is available when a veteran's service-connected disability or disabilities cause "additional hardships above and beyond those contemplated by VA's schedule for rating disabilities." *Breniser v. Shinseki*, 25 Vet.App. 64, 68 (2011); *see* 38 U.S.C. § 1114(k)-(s). As noted briefly above, entitlement to SMC under section 1114(s) is warranted if a veteran "has a service-connected disability rated as total, and . . . has additional service-connected disability or disabilities independently ratable at 60% or more." 38 U.S.C. § 1114(s)(1); *accord* 38 C.F.R. § 3.350(i)(1) (2025).[5] A TDIU rating may satisfy the first statutory requirement that the veteran have a total rating only if the veteran's unemployability is based on a single disability. *Bradley*, 22 Vet.App. at 293. As a corollary, a TDIU rating "that is based on multiple underlying disabilities cannot satisfy the section 1114(s) requirement of 'a service-connected disability' because that requirement must be met by a single disability." *Buie v. Shinseki*, 24 Vet.App. 242, 250 (2010) (quoting 38 U.S.C. § 1114(s)(1)). Notably, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has determined that the 60% requirement of section 1114(s) "unambiguously requires the veteran's additional disabilities be rated at least [60%] based upon the combined ratings table." *Gazelle v. Shulkin*, 868 F.3d 1006, 1012 (Fed. Cir. 2017).

### 3. Favorable Findings Under § 3.104(c)

"Any finding favorable to the claimant made by either a VA adjudicator . . . or by the Board . . . is binding on all subsequent [AOJ] and Board . . . adjudicators, unless rebutted by evidence that identifies a [CUE]." 38 C.F.R. § 3.104(c) (2025). VA is required to notify a claimant of its decisions, including "[a] listing of any findings made by the adjudicator that are favorable to the claimant." 38 C.F.R. § 3.103(f)(4) (2025); *see* 38 U.S.C. § 5104(b)(4); *Cowan v. McDonough*, 35 Vet.App. 232, 242-43 (2022). Relatedly, "[a]ny findings favorable to the claimant as identified by the [AOJ] in notification of a decision or in a prior Board decision on an issue on appeal are binding on all [AOJ] and Board . . . adjudicators, unless rebutted by evidence that identifies a [CUE] in the favorable finding." 38 C.F.R. § 20.801(a) (2025).

In proposing § 20.801, VA noted that, prior to the enactment of the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105, "[i]n practice,

---

[5] SMC(s) may also be awarded where a veteran "has a service-connected disability rated as total, and . . . by reason of such . . . service-connected disability or disabilities, [the veteran] is permanently housebound." 38 U.S.C. § 1114(s)(2). That provision, however, is not implicated in this appeal.

6

the Board would rarely disturb such [favorable] findings," and VA explained that § 20.801 was "largely serving to codify a longstanding practice of the Board not to disturb favorable findings or elements of the claim made by the [AOJ]," VA Claims and Appeals Modernization, 83 Fed. Reg. 39,818, 39,836 (Aug. 10, 2018) (proposed rule).

### 4. Revision of Decisions Generally

In addition to the regulatory limitations on disturbing individual favorable findings, there are a number of provisions explaining when and how VA may seek to reduce or discontinue a prior award of benefits. To begin, 38 C.F.R. § 3.105(a)(1) provides that "[a]t any time after a decision is final . . . VA may initiate[] review of the decision to determine if there was a [CUE] in the decision," and "[w]here evidence establishes such error, the prior decision will be reversed or amended." On the other hand, § 3.105(a)(2) pertains to errors "in binding decisions prior to final adjudication" and requires that "previous decisions which are binding will be accepted as correct by the [AOJ], with respect to the evidentiary record and law existing at the time of the decision, unless the decision is clearly erroneous, after considering whether any favorable findings may be reversed as provided in § 3.104(c)." Further, as relevant to the arguments on appeal, § 3.105(e) governs a "[r]eduction in evaluation—compensation" and § 3.105(h) applies to "[o]ther reductions/discontinuances." 38 C.F.R. § 3.105(e), (h) (2025).

### 5. Severance of Service Connection

"[T]o sever service connection is to conclude that a particular disability previously determined to have been incurred in the line of duty was incurred otherwise." *Read v. Shinseki*, 651 F.3d 1296, 1300 (Fed. Cir. 2011). "[S]ervice connection will be severed only where evidence establishes that it is clearly and unmistakably erroneous (the burden of proof being upon the Government)" and only after certain procedural safeguards have been met. 38 C.F.R. § 3.105(d). To demonstrate that severance is proper, "the Secretary is not limited to the law and the record that existed at the time of the original decision" that awarded service connection. *Stallworth v. Nicholson*, 20 Vet.App. 482, 488 (2006). "Consequently, the severance decision focuses—not on whether the original decision was clearly erroneous—but on whether the current 'evidence establishes that [service connection] *is* clearly [and unmistakably] erroneous.'" *Id.* (emphasis added) (quoting 38 C.F.R. § 3.105(d)). Severance of service connection based on any standard less than that established by § 3.105(d) is erroneous as a matter of law. *Id.*

7

*6. Jurisdiction for Purposes of CUE*

It is well settled that "each 'specific' assertion of CUE constitutes a [matter] that must be the subject of a decision by the [Board] before [this] Court can exercise jurisdiction over it." *Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002); *see Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc) (holding that, when the Court reviews a Board decision regarding CUE, "[t]he necessary jurisdictional 'hook' for this Court to act is a decision of the [Board] on the specific issue of '[CUE]'"). If the "appellant raises a new theory of CUE for the first time before the Court, the Court must dismiss for lack of jurisdiction." *Acciola v. Peake*, 22 Vet.App. 320, 325 (2008) (citing *Sondel v. Brown*, 6 Vet.App. 218, 219-20 (1994)); *cf. Jarrell v. Nicholson*, 20 Vet.App. 326, 333 (2006) (en banc) ("[E]ach wholly distinct and different CUE theory underlying a request for revision is a separate matter and, when attacking a prior RO decision, each must be presented to and adjudicated by the RO in the first instance and, if not, the Board lacks jurisdiction over the merits of the matter.").

*7. Remedy*

When VA seeks to reduce or discontinue benefits, the burden of proof is on the Government. *See Hedgepeth v. Wilkie*, 30 Vet.App. 318, 327 (2018); *Kitchens v. Brown*, 7 Vet.App. 320, 324-35 (1995); *Dofflemyer v. Derwinski*, 2 Vet.App. 277, 279-82 (1992). Our caselaw has addressed the appropriate remedy in various situations when VA fails to satisfy that burden. Generally, "when VA attempts to stop or reduce payment to a veteran" but "fail[s] to comply" with applicable law, the decision "is void ab initio." *King v. Shinseki*, 26 Vet.App. 484, 493 (2014). For example, the Court has held that reversal of the Agency's reduction decision and reinstatement of the original disability rating is the appropriate remedy where the Agency did not afford the claimant the special regulatory protections for rating reductions, imposed an inappropriate standard of proof, or failed entirely to address whether there was an improvement in the ability to function under the ordinary conditions of life and work. *See Stern v. McDonough*, 34 Vet.App. 51, 57-59 (2021) (discussing cases).

Similarly, the Court has determined that reversal of severance of service connection and reinstatement was warranted where "the appellants were never afforded the opportunity to rebut [the factual finding that led to severance], under the appropriate standard, before their benefits were terminated." *Wilson v. West*, 11 Vet.App. 383, 386 (1998). Moreover, in *Horn v. Shinseki*, in which the Court concluded that the evidence of record was "plainly insufficient to rebut the

8

presumption of soundness" and that it was "unclear how a remand would be anything other than yet another opportunity [for VA] to generate more evidence to make up the shortfall" in the current record, the Court held that, because "[t]he Court would not remand a case when a veteran fails to carry a point on which he or she has the burden of proof[, i]t would be unseemly to so accommodate VA and the Board as to matters on which the Government has the burden of proof." 25 Vet.App. 231, 243-44 (2012). Nevertheless, our caselaw leaves open the possibility that remedies other than reversal may be warranted if, for example, informed judicial review is not possible or VA's errors are not prejudicial. *See Stern*, 34 Vet.App. at 57-58.

### B. Parties' Arguments

#### 1. Initial Briefing

##### a. Appellant

The appellant first argues that the Board improperly affirmed the severance of SMC based on a different theory of CUE than the one on which the RO relied to sever SMC. Appellant's Brief (Br.) at 7-10. More particularly, he notes that, although the RO in May 2023 found CUE because his TDIU rating was purportedly based on more than one disability—leaving him without the necessary hook for SMC(s) of one disability rated totally disabling, *see* 38 U.S.C. § 1114(s); *Bradley*, 22 Vet.App. at 293—the Board in the decision on appeal found that the award of SMC was CUE because no single one of the appellant's other disabilities is independently ratable 60% or more, Appellant's Br. at 8; *see* 38 U.S.C. § 1114(s). He contends that "the Board did not have jurisdiction over this distinct CUE theory," asserting that, "[j]ust like the Board cannot entertain a *veteran's* theory of CUE presented for the first time on appeal, it cannot sua sponte raise its own new theory of CUE on appeal." Appellant's Br. at 8 (citing *Jarrell*, 20 Vet.App. at 332-33). Doing so, he explains, would also deprive a veteran of notice of the Agency's reason for finding CUE and of an opportunity to respond. *Id.* at 9.

In the alternative, the appellant maintains that, even if the Board were permitted to address a different theory of CUE, the Board "did not find CUE in the [RO's] favorable findings." *Id.* at 10. In this regard, he avers that the RO in September 2022 granted SMC(s) because it found that he had been awarded TDIU based on a single disability—PTSD—and that "his other conditions

had a combined rating of at least 60[%]."[6] *Id.* (citing R. at 1106). He contends that "[t]he Board could only rebut these findings with 'evidence that identifies a [CUE] in the favorable finding,'" *id.* (quoting 38 C.F.R. § 3.104(c) (2024)), and he argues that "[t]he Board did not even acknowledge the procedure for reversing the [RO's] favorable findings, let alone address whether the [RO's] favorable findings were the result of [CUE]," *id.* at 11.

Relatedly, the appellant asserts that the Board incorrectly interpreted section 1114(s) and § 3.350 as requiring—in addition to a single condition rated totally disabling—another *single* service-connected disability rated at least 60%. *Id.* He notes that the Federal Circuit has expressly determined that "'[section] 1114(s)(1) unambiguously requires the veteran's additional disabilities be rated at least [60%] based upon the combined ratings table' when assessing entitlement to SMC at the housebound rate." *Id.* (emphasis omitted) (quoting *Gazelle*, 868 F.3d at 1012).

Finally, the appellant urges the Court not to address in the first instance the RO's May 2023 CUE finding—that his TDIU was not granted on the basis of a single disability—because the Board has not addressed that theory of CUE, thus depriving the Court of jurisdiction over it. *Id.* at 12-13 (citing *Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000)). If, however, the Court does address that theory of CUE, the appellant asserts that the RO misunderstood the law because the "premise that [the RO] could not grant TDIU based on one disability rated less than 60[%] disabling erroneously imposes more than [38 C.F.R. §] 4.16 requires." *Id.* at 14.

The appellant asks the Court to "set aside and reverse the Board's decision upholding the severance of SMC and order the Board to reinstate SMC" because the severance was not in accordance with the law. *Id.* at 15. As support, he maintains that "the [RO] did not misunderstand or misapply section[] 1114(s)(1)[ or §§] 3.350(i)(1)[] or 4.16(a) when it [found that TDIU was based on PTSD alone] and granted SMC," and so "any finding of CUE would have been arbitrary and capricious." *Id.* at 15-16 (citing 38 C.F.R. § 3.104(c)). Because, he argues, "VA could only sever [his] SMC if it carried its burden of showing that the underlying favorable findings were CUE," and the Board did not make that finding, the Board failed to follow the proper procedures, warranting reversal of severance and reinstatement of SMC. *Id.* at 17 (citing *Andino v. Nicholson*, 498 F.3d 1370, 1373 (Fed. Cir. 2007)).

---

[6] The RO stated that the appellant's "other service[-]connected conditions [we]re ratable at 60[%] or more," and that his other service-connected conditions were "independently ratable at 60[%] or more from February 28, 2018." R. at 1106.

b. Secretary

For his part, "the Secretary agrees with [the a]ppellant that the Board did not . . . identify CUE warranting severance [of] SMC(s), and that the Court should not review the RO's adjudication of CUE on the merits." Secretary's Br. at 9. However, the Secretary maintains that vacatur and remand, rather than reversal, are warranted. *Id.*

Regarding the Board's errors, the Secretary notes that the Board misstated the requirements of section 1114(s), and he acknowledges that "the 60% requirement can be met by combined disabilities." *Id.* at 10 (citing *Buie*, 24 Vet.App. at 249). In addition, the Secretary highlights that, because the Board's decision rests only on its determination that no one of the appellant's other disabilities was rated at least 60%, "the Board did not address the grant of entitlement to TDIU based on PTSD as the single disability rated at 100%, and hence whether the dependent grant of entitlement to SMC(s) was based on CUE." *Id.* He therefore concedes that the Board incorrectly applied the law and failed to address material facts, but he maintains that the Court cannot address those facts in the first instance. *Id.*

Turning to the issue of remedy, the Secretary argues that the "fundamental flaw" in the appellant's argument for reversal is that, "if the Board lacked jurisdiction over an issue, then the Court [also] lacks jurisdiction over that issue." *Id.* at 11 (citing *Andre*, 301 F.3d at 1361). The Secretary contends that it is therefore "unclear on what basis the Court would reverse a Board finding over which it has no jurisdiction." *Id.* Even if the Board did not have jurisdiction over a CUE theory based on the 60% requirement, the Secretary argues, "that does not change the fact that the Board incorrectly applied the law and did not address the material facts regarding the CUE theory related to the single 100% disability requirement, and thus . . . remand, and not reversal, is required." *Id.*

The Secretary also disputes the appellant's assertion that the Board erroneously applied § 3.105(d) (severance of service connection) where it should have applied § 3.105(a)(2) (error in binding decisions prior to final adjudication),[7] and he notes that the standard for finding CUE in a severance decision focuses on whether the current "'evidence establishes that [service connection] *is* clearly erroneous,'" while in motions for revision of final decisions based on CUE, the focus is on the record and law *that existed at the time of the decision*. *Id.* at 14 (quoting *Stallworth*,

---

[7] As outlined below, the Secretary subsequently conceded that § 3.105(d) is not applicable here.

20 Vet.App. at 488). The Secretary reiterates, however, that the Board's incorrect application of the law and failure to address material facts warrant vacatur and remand. *Id.* at 15.

### c. Reply

In reply, the appellant posits that the Secretary's concessions that the Board did not address the RO's grant of entitlement to TDIU based on PTSD alone and did not otherwise identify CUE warranting severance of SMC(s) warrant reversal, "regardless of whether subsection (a)(2) or (d) of 38 C.F.R. § 3.105 governs the severance proceedings here." Reply Br. at 1. This is so, he says, because "under either subsection (a)(2) or (d), 'the Secretary needs to show that [benefits] cannot be granted or maintained under any theory,'" and if he fails to do so, he "'shirk[s] his burden,'" which, in a severance case, requires the Court "'to find severance void ab initio and have VA reinstate' benefits." *Id.* at 2 (quoting *McCauley v. McDonough*, 37 Vet.App. 188, 194 (2024)).

### 2. Supplemental Briefing

The Court sought additional information from the parties on a number of issues. *Stewart v. Collins*, U.S. Vet. App. No. 24-0270 (Mar. 4, 2025) (unpublished order). Here, we summarize only those arguments from the supplemental briefs that provide context for or are necessary to the resolution of this matter.

The appellant reiterates that, even with VA-initiated CUE, "the Board's jurisdiction is limited to the CUE theory that the [RO] adjudicated," Appellant's Supplemental (Supp.) Br. at 1, and that here the RO adjudicated only one CUE theory—that he did not have "a single disability rated totally disabling as required for SMC," *id.* at 3. The appellant further explains that SMC "is a rate of compensation," *id.*, and he argues that § 3.105(a)(2) was the appropriate legal authority under which VA could attempt to terminate that award, *id.* at 7. In taking action under that standard, he contends, VA must also comply with the requirement in § 3.104(c) that favorable findings may be rebutted only based on CUE. *Id.* at 9.

Regarding the appropriate remedy, the appellant maintains that, because the parties agree that the Board "did not identify CUE warranting severance of SMC," the Board failed to carry its burden and reversal is appropriate. *Id.* at 6; *see id.* at 11. He stresses that "the Board failed entirely to address the theory of CUE underlying the [RO's] termination of SMC." *Id.* at 13.

The Secretary acknowledges that, for purposes of VA-initiated CUE, "[t]he Board only has jurisdiction to adjudicate whether to revise a final rating decision . . . if the . . . theory of CUE was first adjudicated in a rating decision by the RO." Secretary's Supp. Br. at 2. He avers, however,

12

that both the 100% requirement and the 60% requirement were "within the scope of the CUE theory" addressed by the RO because the RO "made determinations on both requirements." *Id.* at 8.[8] Additionally, the Secretary clarifies that "SMC is not a special type of service connection or rating, but an ancillary benefit awarded in addition to monthly disability compensation" and is "akin to an evaluation, like a TDIU [rating]." *Id.* at 11. Accordingly, the Secretary posits that VA could seek to reduce that evaluation under §§ 3.105(a)(1), (2), (e), or (h), but it is "not . . . subject to severance under § 3.105(d)." *Id.* at 12; *see id.* at 11-12. The Secretary also explains that, when conducting a CUE analysis pursuant to § 3.105, "the Board and the RO are required to comply with § 3.104(c)" regarding favorable findings. *Id.* at 14. As for the appropriate remedy, the Secretary seeks to distinguish *Horn*—holding that where VA failed to carry its burden reversal is warranted—on the ground that remanding, rather than reversing, in a CUE case would not result in further development of negative evidence. *Id.* at 15-16. Rather, he suggests that, according to *Westervelt v. Collins*, 38 Vet.App. 206 (2025), remand is the appropriate remedy because the Board incorrectly applied the law and failed to provide adequate reasons or bases. Secretary's Supp. Br. at 17.

### 3. Oral Argument

At oral argument, the Secretary made additional concessions. For example, he acknowledged that, although the RO in its May 2023 CUE decision mentioned both the 60% and 100% requirements for SMC(s), the RO did not identify *any error* with regard to the 60% requirement. Oral Argument (OA) at 29:39-30:34, *Stewart v. Collins*, U.S. Vet. App. No. 24-0270 (oral argument held July 17, 2025), https://www.youtube.com/watch?v=BuPV67VLE0o. The Secretary admitted that the RO not having identified error in that regard was a "weakness" in the Agency's argument that the specific CUE theory before the Board included the 60% requirement. *Id.* at 30:35-31:08. The Secretary also agreed that the Board erred in failing to explicitly discuss or apply § 3.104(c) and § 20.801(a) regarding favorable findings. *Id.* at 25:09-26:17. Importantly, the Secretary acknowledged that VA was requesting a remand to better explain why it discontinued SMC(s) or to again attempt to discontinue that benefit. *Id.* at 24:35-:45, 26:59-27:06, 29:06-:37.

---

[8] The Secretary essentially disavowed this contention at oral argument, as discussed further below.

13

C. Discussion

*1. SMC is not Service Connection*

The Board applied § 3.105(d) in this case, treating the May 2023 RO decision as if the RO had severed service connection. *See* R. at 16-22. As noted above, the parties now concur that § 3.105(d) is inapplicable because that subsection applies to severance of service connection, while SMC is a form of compensation. *See* Appellant's Supp. Br. at 7, 8; Secretary's Supp. Br. at 11, 12-13; OA at 16:19-:29. The appellant maintains that "the only authority under which VA could discontinue his SMC based on CUE is [§] 3.105(a)(2)," Appellant's Supp. Br. at 8, while the Secretary avers that, generally speaking, "VA can seek to discontinue [an] award of SMC under 38 C.F.R. §§ 3.105(a)(1)-(2), (e), or (h)," Secretary's Supp. Br. at 12. The Court agrees with the parties' understanding of SMC as a rate of compensation. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (stating that the Court reviews questions of law de novo).

"Service connection connotes many factors but basically it means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein." 38 C.F.R. § 3.303(a) (2025); *see* 38 U.S.C. § 101(16) (defining service connected as meaning "that [a] disability was incurred or aggravated . . . in line of duty"); *cf.* 38 U.S.C. § 101(17) (defining "non-service-connected" as a disability that "was not incurred or aggravated . . . in line of duty"). Establishing that a disability is service connected for purposes of entitlement to VA disability compensation generally requires medical or, in certain circumstances, lay evidence of (1) a current disability, (2) incurrence or aggravation of a disease or injury in service, and (3) a nexus between the claimed in-service injury or disease and the current disability. *See* 38 U.S.C. § 1110; *Shedden v. Principi*, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). Put differently, service connection is generally a description attached to a disability denoting that the condition is related to service. Severance of service connection, then, is an assessment "that a particular disability previously determined to have been incurred in the line of duty was incurred otherwise." *Read*, 651 F.3d at 1300; *see* 38 C.F.R. § 3.105(d).

By contrast, SMC is available when a veteran's service-connected disability or disabilities cause "additional hardships above and beyond those contemplated by VA's schedule for rating disabilities." *Breniser*, 25 Vet.App. at 68; *see* 38 U.S.C. § 1114(k)-(s). "Congress recognized . . . that veterans may have additional disabling conditions that warrant *extra compensation* beyond

the compensation for a total disability rating. It therefore enacted SMC provisions to provide *extra compensation* to 'exceptionally disabled veterans who are rated as totally disabled.'" *Barry v. McDonough*, 101 F.4th 1348, 1350 (Fed. Cir. 2024) (emphases added). Indeed, section 1114 is entitled "[r]ates of . . . disability compensation" and sets forth specific monetary amounts to be paid to veterans rated between 10% and 100% disabled, as well as the extra dollar amounts that are warranted for veterans with additional hardships. 38 U.S.C. § 1114(a)-(t). In short, SMC is, as its name makes clear, a *monetary benefit* paid monthly to veterans who qualify, and "[t]he *rate* of SMC 'varies according to the nature of the veteran's service-connected disabilities.'" *Laska v. McDonough*, 37 Vet.App. 460, 463-64 (2024) (emphasis added) (quoting *Moreira v. Principi*, 3 Vet.App. 522, 524 (1992) (mem. dec.)). Accordingly, generally speaking, the Court concludes that discontinuing SMC reduces the amount of monthly compensation a veteran receives—by eliminating the extra compensation for a service-connected disability or disabilities—but that action does not speak to whether VA continues to recognize his or her disabilities as related to service. *See Barry*, 101 F.4th at 1350.

Because the Board, in discontinuing the appellant's SMC(s) and thereby reducing his compensation, relied on the standards and caselaw applicable to severance of service connection under § 3.105(d), the Court agrees with the parties that the Board erred in this regard. Although the parties disagree as to what subsection of § 3.105 the Board should have applied instead—(a)(1), (a)(2), (e), or (h)—the Board simply did not address the potential applicability of any of those provisions, including (1) whether the September 2022 RO decision that favorably awarded SMC had become final or, if it had not, whether § 3.105(a)(1) could apply, *see* 38 C.F.R. §§ 3.105(a)(1), (2); *see also* Secretary's Supp. Br. at 13 (contending that subsection (a)(1) "had no practical application" in this case, because the September 2022 rating decision was favorable to the claimant, rendering concepts of finality irrelevant for purposes of VA-initiated CUE); (2) whether discontinuing SMC amounts to a "[r]eduction in *evaluation*," 38 C.F.R. § 3.105(e) (emphasis added); *see* OA at 12:03-:52 (appellant arguing that subsection (e) would not apply); or (3) whether a provision dealing with "[o]ther reductions/discontinuances" could be applicable given that provision's reliance on changes in "income, net worth, dependency, or marital or other status," 38 C.F.R. § 3.105(h). In sum, resolving that dispute would require the Court to draw legal conclusions and make findings of fact in the first instance, but "[the Court] must *review* the Board's

15

weighing of the evidence; it may not weigh any evidence itself." *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013).

And in light of the Court's disposition below—reinstating entitlement to SMC(s)—any pronouncement by the Court on this question would constitute a prohibited advisory opinion.[9] *See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) (explaining that under the doctrine prohibiting advisory opinions, "federal courts are to decide only 'actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it'" (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960))); *Norvell v. Peake*, 22 Vet.App. 194, 200 (2008). It is unnecessary to provide guidance to the Board as to what standard the Board should apply on remand when the proper remedy in this case is reversal. *See Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009) ("[T]he Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court's opinion or that would require the Court to issue an advisory opinion.").

### 2. Other Board Errors

As reflected above, SMC(s) is warranted if a veteran "has a service-connected disability rated as total, and . . . has additional service-connected disability or disabilities independently ratable at 60[%] or more." 38 U.S.C. § 1114(s)(1); *see* 38 C.F.R. § 3.350(i)(1). Here, the Board did not recognize that the RO in May 2023 found CUE in the favorable finding that the appellant satisfied the 100% requirement. *See* R. at 16-22; *see also* R. at 309. Rather, it is undisputed that, aside from acknowledging that the appellant is in receipt of TDIU and noting that TDIU "can constitute a single service[-]connected disability,"[10] R. at 21, the Board did not address the 100% requirement of section 1114(s) at all. Instead, the Board found CUE solely in the RO's application

---

[9] For similar reasons, the Court need not resolve the parties' competing arguments regarding the scope of a VA-initiated benefit discontinuance under the appropriate standard—specifically, whether it would include both the 60% and 100% requirements.

[10] As noted above, a TDIU rating may satisfy the 100% requirement for SMC(s) if the veteran's unemployability is based on a single disability. *Bradley*, 22 Vet.App. at 293.

16

of the 60% requirement.[11] R. at 21. Thus, the parties agree that the Board erred in failing to address the 100% requirement. Appellant's Br. at 11; Secretary's Br. at 10; OA at 2:00-:25, 25:09-26:17.

Next, the Board did not explicitly discuss what favorable findings the RO previously made in awarding the appellant SMC(s); acknowledge its own obligations to consider favorable findings binding unless rebutted by "evidence that identifies a clear and unmistakable error," 38 C.F.R. §§ 3.104(c), 20.801(a); or provide any analysis as to why it was not bound by the favorable findings. *See* R. at 16-22. The parties agree that, where VA seeks to discontinue a benefit under § 3.105, VA must also comply with § 3.104(c) with regard to any favorable findings, and that the Board here erred in failing to do so. *See* Appellant's Supp. Br. at 8-9; Secretary's Supp. Br. at 14; OA at 25:45-26:43.

### 3. Remedy

The above discussion reflects that it is undisputed that the Board, in discontinuing the appellant's SMC(s), (1) erred in conducting its analysis under the rubric of a provision pertaining to severance of service connection, (2) failed to address the theory proffered by the RO for finding that the appellant was not entitled to SMC(s)—the 100% requirement, and (3) did not address the provisions of § 3.104(c) or § 20.801(a) pertaining to favorable findings. In other words, the Board "attempt[ed] to stop or reduce payment to a veteran" but "failed to comply" with applicable law, *King*, 26 Vet.App. at 493, including not using "the appropriate standard," *Wilson*, 11 Vet.App. at 386. In light of those conceded errors, the Court concludes that VA's discontinuance of SMC(s) was "fatally flawed." *Id.* at 387. However, the Court rejects the Secretary's contention that remand, rather than reversal, is warranted.

In this regard, the Secretary's reliance on the Court's recent decision in *Westervelt* is misplaced. *See* Secretary's Supp. Br. at 17. In that case, the issues before the Court included (1) whether VA met its burden to discontinue, based on CUE, a separate rating for the veteran's psychiatric condition *and* (2) the appropriate staged ratings for that condition for the entire period on appeal. 38 Vet.App. at 207. Although the Secretary characterizes *Westervelt* as "vacating and remanding for readjudication a Board decision addressing a CUE claim initiated by the RO, for failure to address all material issues of fact or law in the record," Secretary's Supp. Br. at 17, the Court there found that judicial review was frustrated because the Board had not addressed in a

---

[11] Moreover, the parties agree that the Board's determination regarding the 60% requirement was contrary to settled law. *See* Appellant's Br. at 11; Secretary's Br. at 10.

17

single decision those two "intertwined issues" and that the Board addressing both together could "impact or obviate the need for the Court to review the Board's CUE findings." 38 Vet.App. at 208, 214. The Court thus declined to review the Board's CUE analysis at that time. *Id.* at 214. Here, on the other hand, a remand could not "obviate the need" for the Court to review the Board's discontinuance of SMC(s), *id.*; rather, as VA concedes, the Agency would attempt to better explain why it discontinued SMC(s) or again attempt to discontinue that benefit, OA at 24:35-:45, 26:59-27:06, 29:06-:37.

In that regard, although the Secretary seeks remand for an additional opportunity to satisfy his burden, OA at 25:01-:35, 27:25-:32, 29:32-30:03, because "[t]he Court would not remand a case when a veteran fails to carry a point on which he or she has the burden of proof[, i]t would be unseemly to so accommodate VA and the Board as to matters on which the Government has the burden of proof," *Horn*, 25 Vet.App. at 243-44. The Court acknowledges the Secretary's contention—raised for the first time at oral argument—that reversal would have "a preclusive effect" on VA's future ability to attempt to discontinue the appellant's SMC(s), OA at 18:36-21:05, 29:24-:31, but the Secretary did not provide support for this late-raised argument.[12] Reversal and reinstatement, rather than remand, is therefore the appropriate remedy. *See King*, 26 Vet.App. at 493; *Wilson*, 11 Vet.App. at 386.

Finally, because SMC is being reinstated and because the matter of entitlement to an effective date prior to February 28, 2018,[13] for the initial award of SMC(s) is inextricably intertwined with the question of whether SMC(s) should have been discontinued, the Court will vacate the Board's decision dismissing as moot the question of an earlier effective date and remand that matter to the Board for readjudication of that matter. *See Harris v. Derwinski*, 1 Vet.App. 180, 183 (1991) (explaining that claims are "inextricably intertwined" when a decision on one claim would have a "significant impact" on the other and "could render any review by this Court of the decision on the . . . claim meaningless and a waste of judicial resources"), *overruled on other grounds by Tyrues v. Shinseki*, 23 Vet.App. 166 (2009) (en banc), *aff'd*, 631 F.3d 1380 (Fed. Cir.

---

[12] We note, however, that the Court has made plain in other circumstances, such as severance of service connection or a rating reduction, that the Secretary remains free to again attempt to terminate or reduce benefits. *See, e.g.*, *McCauley*, 37 Vet.App. at 196-97; *King*, 26 Vet.App. at 493; *Schafrath v. Derwinski*, 1 Vet.App. 589, 596 (1991) (citing *Swan v. Derwinski*, 2 Vet.App. 72, 73 (1991) (per curiam order)).

[13] As noted above, the Board in the decision on appeal restored SMC(s) for the period from February 28, 2018, to August 1, 2023. R. at 20.

2011), *vacated*, 565 U.S. 802 (2011), *reinstated as modified en banc*, 26 Vet.App. 31 (2012) (per curiam order), *aff'd*, 732 F.3d 1351 (Fed. Cir. 2013); *see also Smith v. Gober*, 236 F.3d 1370, 1372 (Fed. Cir. 2001) (holding that, where the facts underlying two claims are "intimately connected," the interests of judicial economy and of avoiding piecemeal litigation require the claims to be appealed together). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and the Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112.

### III. CONCLUSION

The appeal of that part of the Board's November 1, 2023, decision denying entitlement to (1) an effective date earlier than October 2, 2012, for the award of benefits for an acquired psychiatric disorder, including PTSD; (2) a compensable rating for a posterior trunk scar; (3) a rating in excess of 30% prior to November 1, 2016, and in excess of 50% thereafter for an acquired psychiatric disorder, including PTSD; (4) a rating in excess of 40% for a back disability; (5) a rating in excess of 20% for left lower extremity sciatic nerve radiculopathy; (6) a rating in excess of 20% for right lower extremity sciatic nerve radiculopathy; (7) an effective date earlier than February 28, 2018, for the 20% rating for left lower extremity femoral nerve radiculopathy; and (8) a rating in excess of 20% for right lower extremity femoral nerve radiculopathy is DISMISSED. After consideration of the parties' pleadings and a review of the record, that part of the Board's decision discontinuing SMC(s) effective August 1, 2023, is REVERSED, and the matter is REMANDED with instructions to reinstate SMC(s) as of August 1, 2023. That part of the Board's decision dismissing the matter of entitlement to an effective date earlier than February 28, 2018, for the award of SMC(s) is VACATED, and that matter is REMANDED for further proceedings consistent with this decision.